### BANKS et al. vs. GREEN et al.

1. CHANCERY PRACTICE:  *Where necessary parties are not made, etc.*
   Where necessary parties are not made in a suit in equity, the court, of its
   own motion, should refuse to proceed until they are brought in and
   proper allegations made to bind them.

2. HUSBAND AND WIFE:  *His interest in wife's land held by title-bond, etc.*
   Where a *feme-sole* marries while in possession of land under a bond for
   title, or has taken possession and done such acts under an oral contract
   as would entitle her to specific performance from her vendor, she has an
   equitable *title to* and *estate in* the land to which the husband's marital
   rights attach, but which she can alienate from herself and her heirs only
   by some statutory mode.  It may also be divested by a decree of fore-
   closure.  But her husband can acquire no adverse legal title to it by pay-
   ing the unpaid purchase-money and taking the deed to himself.

3. STATUTE OF LIMITATIONS:  *Against wife's heirs during curtesy.*
   Where one having an estate by curtesy in the land of his wife, sells the
   land, the statute of limitations does not begin to run against the heirs of
   the wife until the termination of the curtesy.

Banks et al. vs. Green et al.

APPEAL from *Lee* Circuit Court in Chancery.

Hon. J. N. CYPERT, Circuit Judge.

*Tappan & Hornor, M. Anderson*, for appellant.

*Palmer, contra.*

EAKIN, J.  Appellants and complainants below are the heirs of Mary M. Yarborough, a widow and *feme-sole* at the beginning of the transactions out of which this litigation has grown, who afterwards intermarried with P. C. Green.

Appellees and defendants below are the widow of said Green by a second marriage, together with his executor, and a great many others, to whom said Green in his lifetime, or his executor since, have conveyed portions of the land in controversy.

The bill states that said Mary M., being the widow of Yarborough, in the year 1849 purchased from one Cavins a quarter section of land, described as the *northwest quarter. of sec. 23, in township 2 north, of range 3 east*, for the sum of $625, of which she paid in cash $300, and gave notes for the balance, taking from Cavins a title-bond, in the usual form, for a deed, to be executed on the payment of the purchase-money.  This was not recorded.  Afterwards she hired to Cavins, for the year 1850, a certain slave, for the sum of $140, to be applied as a credit on the debt for the land.

She was then, as charged, possessed of a number of slaves. Before obtaining a deed for the land she intermarried with said Green, who took possession of the title-bond and obtained from Cavins a deed to himself personally, which he put upon record.  The complainants say that if he paid any part of the consideration, the means came from the proceeds of the labor of property derived through the wife.

She died in 1869, after which Green married the defendant, Alicia, and himself died on the twenty sixth of September, 1875. He left a will, which was duly probated. During his life he, with his second wife, conveyed small portions of the land to divers persons. These conveyances are set forth, and claimants under them made parties.

Some of them are conceded to be innocent purchasers for valuable consideration, against whom no relief is sought. With regard to the others, it is charged generally that they knew of the equities of complainants.

The bill concedes the right of the husband Green to the enjoyment of the property during his life, by curtesy, as there was issue of the marriage, but claims that said Green took title from Cavins, and held it as trustee for himself during life, and for the heirs of Mary, his wife, after his death.

The object of the bill is to declare that trust, and have partition of the land amongst complainants as heirs. There is, besides, a prayer for all appropriate relief. The defendants, some of them, answered severally, and all filed a joint answer, in which they admit the purchase of the quarter-section from Cavins by Mrs. Yarborough, at the time alleged, and for the price stated, but deny that she paid any of the consideration, or gave her notes for the residue. They deny, further, that Cavins ever executed a title-bond, or gave any writing regarding the sale. They deny that Mrs. Yarborough ever hired a slave to Cavins in part payment of the price of the land. They say the purchase was wholly verbal, and void under the statute of frauds.

They deny that Mrs. Yarborough had any considerable amount of property when she intermarried with Green, but say she was in debt and much embarrassed; and that Green paid off for her debts to the amount of $2,200; that

he had some means at the time of his marriage; was a physician in good practice, and managed the property of his wife so as to support her and her family.

They claim that Mrs. Yarborough (then Mrs. Green) was unable to complete the purchase, and abandoned it, and that afterwards, in 1854, Dr. Green bought it upon a new contract and obtained a deed, paying the whole consideration himself.

They, one and all, except the executor and widow, deny any notice of complainant's equity at the time of their respective purchases, and down to the payment of the purchase money. Some of them say they have made valuable improvements, which they claim in case of an adverse decree as to title.

The cause was submitted to the court upon the pleadings and evidence, under an agreement, made of record, that in case of a decree for the complainants, there should be a reference to the Master to take testimony as to who were or were not innocent purchasers for value. Whereupon the court dismissed the bill for want of equity, and complainants appealed. This eliminates from the question, now presented here, all considerations of notice, and of the doctrine of innocent purchasers for value. If complainants have any equities, against any parties, the decree is erroneous; and the cause should be returned for further proceedings.

The professional prominence, and well-known ability of the counsel, on both sides, engaged in the preparation of the pleadings, justify some remarks of the court upon the looseness to which a misunderstanding of the spirit of the Code is leading. In this case, no exhibit of the will of Dr. Green is made, nor statement of its provisions. No devisees are named, nor is it shown who were the heirs of

Banks et al. vs. Green et al.

Dr. Green. Two of the defendants evidently are, but there may be others. If complainants have any equities at all, they must, as to the unsold portions of the quarter-section, be enforced against Green's heirs or devisees; and it is impossible to bind them, from anything which appears in this record. The Code does not contemplate such pleadings, and the indulgence of the courts is too freely invoked and too often extended in their toleration.

1 CHANCERY PRACTICE: Where necessary parties are not made, etc.

Where the attorneys make no objections, it would be well for the courts to refuse to proceed, at least until parties are brought in, and allegations made to bind them to the extent of determining and setting at rest some substantial matters of litigation. It is incidentally developed in the evidence that Mrs. Green is the devisee of a half interest in the lands, and the briefs seem to assume that she claims all. We will proceed nevertheless to consider of the questions presented by counsel.

2. HUSBAND AND WIFE: His interest in wife's land held by title bond.

It is conceded that the lands were originally purchased by Mrs. Mary A. Yarborough, *dum sola*, from Cavins; that she took possession under and in pursuance of the contract; was in possession when she intermarried with Dr. Green, and that he acquired his original possession by marital right. The questions which first arise are: Had she, at the time of her marriage, any title-bond, or contract in writing binding on Cavins? or, if not, had she gone into possession and done such acts as would have given her a vested right to enforce against Cavins a specific performance? In either case she would have had an equitable *title to*, and *estate in*, the land to which, indeed, all the husband's marital rights would attach, but which she could only alienate from herself and her heirs by some statutory mode. It might also have been divested by a proceeding to foreclose. Otherwise, it remained in her, and

subject to all equities against it, passed to her heirs on the expiration of the husband's courtesy.

This title the husband could, for his own marital enjoyment, *protect*, by payment of the purchase-money, but could not *acquire*. The personal property of the wife became his, together with the obligation to pay her debts, but with no special trust attached to it, in his hands, for the purpose of paying her debts, more than to any other personal property of his own.

There is no principle in equity by which if the *legal title* had been in the wife, subject to a lien for a part, or all, of the purchase-money, the husband could have raised, for his benefit, a resulting trust, by paying it; nor, on the other hand, where the wife has the *equitable* title, is there any recognized principle of equity, by which the husband could gain an *adverse legal* title, by paying off an incumbrance and taking the deed to himself. He will be held a trustee of the wife for her equitable estate. To allow him thus to acquire an adverse right would be incompatible with the marital relation. Whether or not, as against the wife and her heirs, he would be subrogated to the lien of the vendor, or incumbrancer, is a question not free from doubt. It is not made by counsel and will not be prematurely decided. Attorneys should have an opportunity of being heard upon the precise question. It is of great practical importance.

The evidence is strongly preponderating to show that Mrs. Mary A. Yarborcugh, the ancestress of complainants, had a title-bond from Cavins for the land in question, and, consequently, an equitable estate in the whole quarter-section as against her husband, his heirs or devisees, or purchasers with notice, or without valuable consideration. What the husband actually paid is not clearly apparent.

Whether, if ascertained, it may be treated as a lien, is a question left for original determination in the court below. In no case can it be considered as having given him an estate in the lands beyond his curtesy.

**3. STATUTE OF LIMITATIONS: Against wife's heirs during curtesy.** The statute of limitations did not commence running against the heirs of Mrs. Mary A. Green before the termination of her husband's estate by curtesy.

The title of Dr. Green appearing perfect on the record, will protect all innocent purchasers from him, or from his executors, under proper powers conferred by will, or the probate court; that is to say, those who purchased for valuable consideration and without notice, according to rules regulating this protection as established by courts of equity.

As for the rest of the quarter-section in controversy, it belongs to the heirs of Mrs. Mary A. Green, formerly Yarborough, subject to such liens, if any, as remain upon it, for purchase-money, the validity of which we, for the reason above given, express here no opinion. This court approves the practice in cases like this, of referring the matter to the Master, to take and report testimony as to whether the several purchasers had notice or were not purchasers for value.

Reverse the decree, and remand the cause for further proceedings, and with leave to the parties to amend their pleadings, and make new parties if deemed advisable.