St. Louis & San Francisco Railroad Company *v*. Ruttan.

Opinion delivered April 19, 1909.

1.  Adverse possession—right of way of railroad.—The statute of limitations runs against a railroad company whose right of way is held adversely by another. (Page 180.)

2.  Same—character of possession.—Where a portion of a railroad·company's right of way is enclosed and occupied by another, the question whether the latter's possession is adverse depends upon the character of that possession and whether notice thereof has been brought to the company's attention. (Page 180.)

3.  Same—sufficiency of evidence of adverse holding.—Proof that, after land was conveyed to a railroad company for right of way, the grantor remained in possession of a part thereof and conveyed the land, except that part upon which the railroad company's track was laid, to a stranger, who continued to hold possession thereof, is sufficient, in the absence of explanatory evidence, to support a finding that the latter's holding was adverse to the railroad company. (Page 180.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; affirmed.

*W. F. Evans* and *B. R. Davidson,* for appellant.

1.  The element of adverse or hostile holding is lacking in this case. The possession, to be adverse, must be hostile and not subservient to the rights of the true owner. 42 Ark. 118; 54 Ark. 608; 65 Ark. 422; 76 Ark. 405; 43 Ark. 469; *Id.* 504.

The deeds were no notice to appellant, and would not have been, even if they had not excepted the right of way, since the holding was consistent with appellant's rights if not interfering with the operation of the road.   55 Ark. 104; 69 Ark. 562; 3 Am. & Eng. R. Cas., N. S., 342; 28 *Id.* 562.

2.   A railroad company is under no duty to use the full width of its right of way until the needs of the company demand it, and nonuser is no evidence of abandonment.   69 Ark. 562; 37 Ind. 294; 57 Ia. 675; 91 N. Y. 561; 112 Mass. 224; 29 Ia. 276; 140 Mass. 472; 7 O. St. 1.

*Sam R. Chew,* for appellee.

1.   The statute of limitations makes no exception in favor of railroad corporations, and the courts can make none.   64 Ark. 64; 67 Ark. 84; 41 Ark. 45; 84 Ark. 52.   Independently of his deed, appellee, under the agreed statement of facts, has acquired title by limitation.   61 Ark. 527; 59 Ark. 626; 61 Ark. 575; 23 Ark. 336; 48 Ark. 312; 38 Ark. 18; 83 Ark. 534.

2.   The parties here deraign title from a common source. If appellant only bought an easement, this was a dominant estate which could be defeated by actual entry and adverse holding for the prescribed time.   18 N. E. 301; 24 So. 536; 69 Ark. 562; 94 Ky. 313; 44 S. W. 359.

McCULLOCH, C. J.   This is an action instituted by appellant railroad company against appellee to recover possession of a strip of land in the city of Van Buren, Arkansas, originally embraced in the right of way conveyed to the company in the year 1882 by the then owners of the land, Cyrus Lomax and Oliver Maxey.   The grant to the railroad company conveyed a strip one hundred feet wide through lots 1, 2 and 3 of block 20 in the city of Van Buren, and the company proceeded to lay the main track of its railroad in the center of the right of way thus granted.   Lomax and Maxey thereafter executed to one Miller deeds conveying said lots, "except that part upon which the track of the St. Louis & San Francisco Railroad Company is laid;" and in 1893 Miller took possession of the land in controversy and held it until he conveyed it to Mary Carter, who in turn conveyed it in 1896 to appellee. It is agreed that appellee and his grantors, Miller and Mary

Carter, before him have held actual, open and continuous posses-
sion of the strip of land in controversy, claiming to be the
owners thereof, since the year 1893.   The strip in controversy
is inclosed, with the remainder of appellee's premises, by a fence
running parallel with the railroad track, and this particular
part has, during the period of time described above, been culti-
vated as a garden.   It is also agreed that the officials and
employees of the railroad company knew that the strip in con-
trovery was fenced and in actual occupancy of appellee and
his grantors, but had no actual notice that they claimed owner-
ship.   On these facts the trial court, sitting as a jury, ren-
dered judgment for appellee on his plea of the statute of
limitations, and the company appealed.

It is contended that the right of way of a railroad company
rests upon a different principle from real estate in general, and
that, inasmuch as the company is not compelled to actually use
the full width of its right of way until the needs thereof should
demand, the statute of limitations will not commence running
unless there be actual, adverse occupancy and actual notice
of the hostile claim be given to the company.   The statute of
limitations operates against railroad corporations whose lands
are held adversely as well as against individuals; and this
applies to the right of way.   *Graham* v. *St. Louis, I. M. & S.
Ry. Co.,* 69 Ark. 562; *Ill. Cent. Rd. Co.* v. *Houghton,* 126 Ill.
233, 18 N. E. 301; *Paxton* v. *Yazoo & M. V. Rd. Co.,* 76 Miss.
536, 24 So. 536.

The fact that the company is not compelled to use the full
width of its right of way within a particular time, and that non-
user of the entire right of way is not conclusive evidence of its
abandonment of the unused portion, may alter the character
of proof upon which adverse possession is to be determined; but
after all, as in other cases wherein the question arises, it becomes
purely a question whether or not the possession is adverse and
has, either actually or by necessary implication, been brought to
the attention of the company.   This court, in *Little Rock* v.
*Wright,* 58 Ark. 142, speaking of the application of the doctrine
of adverse possession against a city, said:  "What is adverse
possession?  No possession consistent with the right of the true
owner can be adverse to him.  In this case the land was dedi-

cated to public use for streets, but it remained inclosed and obstructed after the dedication. The city had the right to postpone the removal.of the obstructions and the opening of the streets until such time as its resources permitted and the public necessities demanded." In that case the adverse possesssion was asserted against the city by the heirs of. the dedicator, and the court held that the occupancy was not inconsistent with the rights of the city, and did not become hostile until actual notice of the hostility of the claim was brought to the attention of the city.

The doctrine of that case has been recognized in many subsequent decisions of this court. In *Graham* v. *St. Louis, I. M. & S. Ry. Co.,* 69 Ark. 562, which was a controversy between the railroad company and the devisee of the original grantor of the right of way, in which the statute of limitations was pleaded by the latter, Mr. Justice RIDDICK, speaking for the court, said: "Though the continued possession of the land by the vendor after conveyance executed is not, of itself, sufficient to show a holding adverse to the vendee, yet there is nothing in their relations which will prevent the vendor from acquiring title by adverse possession. But, before the vendor or those claiming under him can acquire title in that way against the vendee, the intention to hold adversely must be manifested by some unequivocal act of hostility, such as to give notice to the vendee of the intention of the vendor to deny his right and hold adversely to him. Until this is shown, the statute does not commence to run. (Citing authorities.) The distinction between a vendor and a stranger in such a case relates to the character of evidence necessary to show that the possession was adverse. If the parties are strangers in title, possession and the exercise of acts of ownership are, in themselves, in the absence of explanatory evidence, proof that the holding is adverse; whereas if the vendor, after having executed deed, continues to remain in possession, the natural and reasonable inference, in the absence of evidence to the contrary, would be that he holds in recognition of the rights of the person to whom he has conveyed."

In *El Dorado* v. *Ritchie Gro. Co.,* 84 Ark. 52, which was a controversy between an incorporated town and the grantee of the original dedicator of a street, in which the statute was

pleaded, the court held that such grantee was a stranger to the title under the dedication, and applied the rule announced in the Graham case, holding that the possession ripened into title by limitation. In a similar case the court said: "The rule is different as to Mrs. John, who was a stranger to the dedication deed, and her occupancy of the premises and exercise of acts of ownership over it were of themselves evidence of adverse possession." *Stuttgart* v. *John,* 85 Ark. 520.

The presumption as to whether the appellee's possession was hostile to the rights of the railroad company, or in subordination thereto, would be different if he had accepted· a conveyance which in terms recognized the rights of the company. But the various deeds to the land expressly include the land in controversy, for they convey the whole lots except that part upon which the track is laid. This language is susceptible of only one construction, and that is that the intention was to convey all that part which had been previously conveyed to the railroad company except the part covered by the track. This leaves no room for the contention that appellee, by the acceptance of the conveyance, recognized the rights of the company in and to the strip conveyed to him.

We are therefore of the opinion that the evidence established appellee's title by limitation, and that the judgment of the court in his favor was correct.

Affirmed.