## WATSON v. HARDIN.

### Opinion delivered December 12, 1910.

1. ADVERSE POSSESSION—WHAT CONSTITUTES.—To be adverse, possession of land must be actual, open, continuous, hostile, exclusive, and be accompanied with an intent to hold adversely to the true owner. (Page 36.)

2. LIMITATION OF ACTIONS—LIFE TENANCY.—The statute of limitations does not run against a·remainderman until the death of the life tenant. (Page 36.)

3. ADVERSE POSSESSION—WIDOW'S POSSESSION OF HUSBAND'S HOMESTEAD.— The possession by a widow of her husband's homestead is not adverse to his heir, and the statute of limitation does not run in such case against the heir until the death of the widow. (Page 36.)

4. SAME—NOTICE.—Before a widow's possession of her deceased husband's homestead can become adverse to his heir, it is necessary for her first to disavow the husband's title, and notice of such disavowal must be brought home to the heir, or must have been so open and notorious as to raise the presumption of notice to him. (Page 36.)

Appeal from Chicot Circuit Court; *James R. Yerger,* Special Judge; reversed.

*J. R. Parker,* for appellant.

1. The marriage of Steve Watson and Clarissa, while slaves by the consent of their master, followed by their living

together as husband and wife after they were emancipated, was a lawful marriage, and their son, appellant, is legitimate, and capable of inheriting his property. 34 La. Ann. 860; 32 Ark. 217; Acts 1867, p. 99, § 3; 38 Ark. 493.

2. The possession of Rachel as widow of Steve was not adverse to Alex as heir at law. 55 Ark. 104, 109; 42 Ark. 118; 44 Ark. 452; 33 Ark. 463; *Id.* 295; 43 Ark. 504; *Id.* 469; 22 Ark. 567; 35 Ark. 84; 42 Ark. 357.

*W. G. Streett, E. A. Bolton* and *William Kirten,* for appellee.

Rachel Watson, who, under the proof, was never the lawful wife of Steve Watson, acquired title by her actual, visible, open and notorious possession for a period of more than seven years under claim of ownership. 30 Ark. 640; 24 Ark. 371. Appellant, it is shown, was notified immediately of the death of his father, and made no inquiries as to the status of the decedent's estate. He was under the duty to seek out and learn of Rachel the nature of her claim, and the law imputes to him notice of whatever right the occupant had in the land of which she had possession. 90 Ark. 149; 16 Ark. 340; 41 Ark. 169; 47 Ark. 533; 66 Ark. 167; 76 Ark. 25; 77 Ark. 309; 82 Ark. 455; 87 Ark. 496.

FRAUENTHAL, J. This was an ejectment suit instituted by appellant in February, 1910, for the recovery of a tract of land in Chicot County. The land was originally owned by one Steve Watson, who died intestate in 1897, seized and possessed thereof as his homestead. Appellant alleged that he was the sole child and heir of Steve Watson, and claimed title to the land by descent from him. The appellee claimed title to the land by devise from one Rachel Watson,. who was living with Steve Watson at the time of his death and for some years prior thereto as his wife. In his answer appellee denied that appellant was the child of Steve Watson, and alleged that Steve Watson died without lineal or collateral heirs, and that said Rachel Watson as his widow became the owner of the land by virtue of section 2642 of Kirby' Digest. During the progress of the trial he obtained permission of the court and amended his answer by pleading an investiture of title in said Rachel Watson by virtue of adverse possession.

It appears from the testimony that prior to the war between the States Steve Watson was a slave residing in the State of Louisiana; and that he entered into a slave marriage with one Clarissa, and that appellant was his child as a result of that union. For several years after the close of the war he lived and cohabited with said Clarissa as his wife in the State of Louisiana; and during all that time and to the date of his death he recognized appellant as his son; and it is conceded that the marriage between Steve Watson and Clarissa thereby was rendered valid, and their issue therefrom legitimate. Subsequently he moved to Arkansas, leaving his wife and son in Louisiana; and later he married or lived with said Rachel as his wife, and was living with her as his wife at the date of his death; but it appears from the testimony that said Clarissa was still living at the time of his death, and it does not appear that his marriage to her was ever dissolved by the decree of any court. At the date of his death Steve Watson owned and was in possession of the land in controversy as his homestead, and the said Rachel after his death remained in possession of the land claiming said possession by virtue of being his widow, and thus continued in possession thereof until her death in 1909. Sometime prior to her death she desired to convey the land to appellee for taking care of her, but at the suggestion of the attorney to whom she applied to have the deed prepared she made a will devising it to appellee.

Upon the trial of the case the court directed the jury to return a verdict in favor of appellee, which was done. The question now presented by this appeal is to determine whether or not the court erred in directing said peremptory verdict.

In his original answer appellee claimed title to the land through Rachel Watson, who he alleged acquired title thereto through Steve Watson by reason of the fact that she was his widow, and he had died without leaving lineal or collateral heirs. Subsequently he amended his answer by pleading that said Rachel Watson had acquired title to the land by adverse possession, and now insists that the undisputed evidence sustains this latter plea.

It is true that Rachel Watson was in the actual possession of the land from the date of the death of Steve Watson in

1897 up to the date of her death in 1909, and therefore for a longer period than seven years. But, in order to render a possession adverse so that it will ripen into title against the true owner, it must be hostile to such owner; the possession must be in actual and notorious opposition to the right and interest of the true owner and not in subordination to or consistent with the interest of such owner. In the case of *Ringo* v. *Woodruff*, 43 Ark. 469, in discussing what is necessary to constitute adverse possession, this court said: "It is well settled by the authorities that this possession must be actual, open, continuous, hostile, exclusive and be accompanied by an intent to hold adversely and in derogation of and not in conformity with the right of the true owner. * * * It must be hostile in order to show that it is not held in subordination and subserviency to the title of the owner." *Ellsworth* v. *Hale,* 33 Ark. 633; *Pulaski County* v. *State,* 42 Ark. 118; *Little Rock* v. *Wright,* 58 Ark. 142; 2 Cyc. 1026; 1 Am. & Eng. Enc. Law, 769.

Now, the possession of the widow is not hostile to the title of the heir. The widow is entitled to the possession of the land as her homestead during her life; she holds the life estate and the heir the reversion; the possession of the widow is therefore not adverse to the heir. The general rule is that the statute of limitation does not run against the reversioner until the death of the tenant for life. *Padgett* v. *Norman,* 44 Ark. 490; *Banks* v. *Green,* 35 Ark. 84; *Moore* v. *Childress,* 58 Ark. 510; *Ogden* v. *Ogden,* 60 Ark. 70.

The testimony adduced upon the trial of the case proved that Rachel Watson retained possession of the land after the death of Steve Watson solely by reason of the fact that she was his widow. Her claim to the land was derived from Steve Watson, and was in recognition of his right and title thereto. Her claim was therefore in recognition also of the interest of the heir of Steve Watson, if he had an heir. In its inception her claim of possession of the land was not hostile to the right or interest of the heir of Steve Watson, but was perfectly consistent and in conformity with such right and interest. It is true that her claim and possession might have been of such a nature as to amount to an entire disseizion of the heir and an entire denial of his rights, so as to result in an acquisition

of title by adverse possession; but, before her possession could become adverse, it was necessary for her to first repudiate the title of Steve Watson and to disavow any claim thereto as his widow; and it was also essential that notice of such disavowal by her of title as widow should be brought home to the heir. If Rachel Watson acquired possession of the land as widow of Steve Watson, and therefore in conformity with the right and interest of his heir and not in opposition to such interest, then, in order to constitute possession that would be adverse, it was incumbent upon appellee to prove that she disclaimed title in Steve Watson, under whom she acquired the possession, and that she claimed actual possession thereof hostile to that title and to the heir, of which he had notice; or that her disclaimer and hostile possession was so open and notorious as to raise the presumption of notice to him. 1 Am. & Eng. Enc. Law, 798; 2 Cyc. 391; *Lindsey* v. *Smith* (Ky.), 114 S. W. 779; *Graham* v. *St. Louis, I. M. & S. Ry. Co.,* 69 Ark. 562; *St. Louis & S. F. Rd. Co.* v. *Ruttan,* 90 Ark. 178.

We think that the evidence adduced at the trial proved that Rachel Watson held the possession of the land only by virtue of her being the widow of Steve Watson, and that, if she at any time repudiated the title of Steve Watson, and claimed a right to the entire estate and fee in the land hostile to that title and the right of appellant, the heir of Watson, there was a question as to whether or not notice of her repudiation of that title and of her disclaimer to hold as widow and her avowal to hold the fee was brought home to appellee, or was so notorious as to raise the presumption that he had notice thereof. It therefore became a question of fact for the jury to determine whether or not her possession was adverse so as to invest her with title in fee to the land.

The court erred in giving the peremptory instruction, and for this error the judgment is reversed, and the cause remanded for a new trial.