BOYD *v.* EPPERSON.

Opinion delivered July 11, 1921.

1. WILLS—PRETERMITTED CHILD.—Under Crawford and Moses' Dig., § 10507, if a testator omit the name of a child from his will, he will be deemed to have died intestate as to the omitted child, and such child will be entitled to recover the same portion of the father's estate as would have descended or been distributed to such child if the father had died intestate.

2. ADVERSE POSSESSION—POSSESSION OF WIDOW.—Where decedent's heirs permitted his widow to reside on his land from the date of his death until her death, it being their duty to assign dower to her, her occupancy pending the assignment of dower was not adverse to such heirs.

Appeal from Grant Chancery Court; *J. P. Henderson*, Chancellor; affirmed.

### STATEMENT OF FACTS.

This was an action in ejectment brought by appellees against appellants in the circuit court to recover possession of a tract of land.

Appellants answered denying title in appellees and claiming title in themselves. They also pleaded the statute of limitations. On motion of appellants the case was transferred to the chancery court and heard there.

Both parties claim title from the same source. The land was originally owned by Mack Harmon, who died testate in 1911 in Grant County, Arkansas, where the land in question is situated. Appellees claimed title to the land as the heirs at law of said Mack Harmon, deceased. Appellants claim title as heirs at law of their mother, who was the second wife of Mack Harmon, and who they claim took the land under his will at his death.

All the parties interested are negroes. Mack Harmon and Miranda Harmon, his first wife, came to Grant County, Arkansas, from the State of South Carolina, and settled there. Mack Harmon brought to Arkansas with him his family, Miranda Harmon, his wife, and Rose Epperson, then Rose Harmon, a little girl about six years old. He first rented land in Grant County and subsequently acquired, by purchase, the land in controversy. In March, 1905, Miranda Harmon secured a divorce from Mack Harmon and forty acres of his land were decreed to her. Then Mack Harmon married the mother of appellants and lived with her until his death. He made a will and devised to Nora Sites twenty acres of land and the balance to his wife, Frances Harmon. Nora Sites is the daughter of Rose Epperson, and Frances Harmon is the

mother of appellants, they being her children by her first husband.

Miranda Harmon was a witness for appellees. According to her testimony, she was married to Mack Harmon in Lexington County, South Carolina, but does not remember the date of her marriage. Appellee, Rose Epperson, is her daughter by Mack Harmon, and she was born in South Carolina after the marriage. The witness does not remember how long, but it was something like a year or two after their marriage. The witness does not remember what year they came to Arkansas, but according to the white folks it was thirty-four or thirty-five years ago, and Rose was then four or five years old. Mack always treated Rose as his daughter and so spoke of her to other people. Rose called her "mama" and Mack "papa." Witness denied that she had told Joe Stoudamire, or any one else, that Rose Epperson was not the daughter of Mack Harmon, but was the daughter of Hillard Roseboro. She denied that she knew Joe Stoudamire in South Carolina.

According to the testimony of Rose Epperson, Miranda is her mother and Mack Harmon is her father. They told her that she was born in South Carolina, and she said that she was too small to remember coming to Arkansas. Mack Harmon always called her daughter and always spoke of her as his daughter to his friends and acquaintances. The witness took the side of her mother in the divorce proceedings and never visited her father after he married Frances Boyd. Mack Harmon lived on the land of Frances Boyd until his death.

Several white people, five or six in number, testified that Mack Harmon moved on a farm near them when he came to Arkansas in 1884 or 1885. He had with him, Miranda Harmon and Rose Epperson, then a little girl five or six years old, whom he represented to be his wife and daughter. He continued to treat and speak of them as his wife and daughter during all the time that he lived in that neighborhood.

Dr. J. M. Goodman testified that he had known Mack and Miranda Harmon and Rose Epperson for twenty-three years and had done their practice during that time; that he had frequently heard Mack talk about his family, and that he said that his family consisted of himself, Miranda, his wife, and his daughter Rose. Mack referred to Rose as his daughter nearly every time that he visited the house.

According to the testimony of Joe Stoudamire, he knew Mack Harmon and Miranda Harmon in Lexington County, South Carolina, and remembered that they were married there in 1883. Rose was living with her mother at the time her mother married Mack Harmon. Rose looked to be six or seven years of age when Mack and Miranda married. Witness came to Arkansas in 1888, and Mack Harmon and his family lived in South Carolina at that time. Witness did not know what time they came to Arkansas.

According to the testimony of David W. Mays, Miranda Harmon told him that Hillard Roseboro was the father of her daughter Rose. Mack Harmon also told him this.

Other negroes, who were well acquainted with Miranda Harmon, testified that she had told them that Hillard Roseboro was the father of Rose Epperson. Miranda Harmon denied this in every instance.

A brother of Joe Stoudamire testified for appellees that Joe Stoudamire did not know Mack Harmon and his family before they came to Arkansas.

Another witness testified that Rose Epperson told him that Hillard Roseboro was her father. Rose Epperson denied this.

The will of Mack Harmon failed to refer to or mention Rose Epperson or John Harmon.

Mack Harmon devised twenty acres of the land owned by him in Grant County to Nora Sites, who is the

daughter of Rose Epperson. The balance of the land he devised to his wife, Frances Harmon, the mother of appellants. After his death in 1911, Frances Harmon, his widow, moved on the land in controversy and lived there until her death in August, 1919.

*E. H. Vance, Jr., D. E. Waddell* and *A. W. Jernigan,* for appellants.

*W. D. Brouse,* for appellee.

HART, J. (after stating the facts). The chancellor found that Rose Epperson was the legitimate daughter of Mack Harmon, deceased, and that she and John Harmon, her older half-brother, were the sole heirs at law of said Mack Harmon, deceased.

We are of the opinion that the evidence sustained the finding of the chancellor. According to the testimony of Miranda Harmon, Rose Harmon was born after her marriage to Mack Harmon in South Carolina. The witness did not remember the date of her marriage to Mack Harmon, nor the date on which Rose was born. She remembered distinctly, however, that Rose was born after their marriage in South Carolina, and was four or five years of age when they came to Grant County, Arkansas. They rented land when they first came to Arkansas, and the white people from whom they rented land and others who knew them said that Mack Harmon always spoke of Rose as his own daughter. The family physician who knew them for twenty-three years said that Mack always spoke of Rose as his own daughter. The evidence of these witnesses tends to corroborate the testimony of Miranda Harmon. The testimony shows more than occasional conduct and declarations by Mack Harmon that he was the father of Rose. He spoke of and treated Rose as his daughter during the whole period of his residence in Arkansas. He devised to her daughter a part of his land after he had become estranged from Rose on account of the divorce from her mother. The whole course of his conduct shows that he reconized Rose

as his daughter.   The witnesses all said that Mack Harmon came to Arkansas in 1884 or 1885, and that Rose appeared to be five or six years of age at that time.

It is true that Joe Stoudamire and others testified that Miranda Harmon had admitted to them that Hillard Roseboro was the father of Rose, but we do not think their testimony is sufficient to overcome the testimony favoring the legitimacy of Rose.   Joe Stoudamire testified that he knew Mack and Miranda Harmon and that they married in South Carolina in 1883.   He said that Rose was six or seven years old when they married and that he came to Arkansas in 1888, leaving the Harmons still in South Carolina.   His testimony is contradicted by all the witnesses for the appellees.   They testified that Mack Harmon and his family came to Arkansas in 1884 or 1885, and that Rose then appeared to be only five or six years old.   George Stoudamire, the brother of Joe, testified that Joe did not know the Harmons in South Carolina.   The testimony is too long to be set out in its entirety, but a careful consideration of it leads us, as above stated, to the conclusion that the chancellor was right in finding that Rose Epperson was the daughter of Mack Harmon and was born after his marriage to Miranda.

The will of Mack Harmon is copied in the transcript. The name of Rose Epperson is not contained in it, and no reference whatever is made to her.   Under section 10507 of Crawford & Moses' Digest, if a testator omits the name of a child from his will, he will be deemed to have died intestate as to the child omitted and such child shall be entitled to recover the same portion of her father's estate as would have descended or been distributed to such child if the father had died intestate.

It follows then that because Rose Epperson was not named in her father's will he died intestate as to her.   The record is not very clear as to whether John Harmon was the son of Mack Harmon, but that does not make any difference.   Rose Epperson conveyed a half interest in the land to him, and, as we have already seen,

the chancellor was right in holding her to be the legitimate child of Mack Harmon. She and John Harmon, then, were the only heirs at law of Mack Harmon, deceased, and inherited his property subject to the widow's right of dower. Mack Harmon died in 1911, and his widow, Frances, then went on the land and resided there until her death in August, 1919. It is claimed that she thus acquired title to the land by adverse possession, and that appellants inherited the land from her. The widow did not acquire any title to the land by adverse possession. Under our statute it was the duty of the heirs to lay off and assign dower to the window. . Crawford & Moses' Digest, § 3544.

Appellees permitted the widow to reside on the land from the date of her husband's death until her death. It was their duty to assign dower to the widow, and the widow's occupancy pending the assignment of dower was not an adverse holding. *Brinkley* v. *Taylor,* 111 Ark. 305. Therefore the statute of limitations did not begin to run in favor of appellants until after the death of their mother who was the widow of Mack Harmon, deceased.

It follows that the decree must be affirmed.