CULLINS *v.* WEBB.

4-7387                                    180 S. W. 2d 835

Opinion delivered June 5, 1944.

Booker & Booker and Elmer Schoggen, for appellant.

Warner & Warner, for appellee.

McFADDIN, J. This appeal raises the question of the effectiveness of limitations and laches when pleaded by a demurrer to the complaint.

On September 8, 1943, appellant filed this suit in the Sebastian chancery court against Nancy J. Webb and the appellee, Viola Earle Rigney. The amended and substituted complaint, omitting caption and prayer, was as follows:

"Comes the plaintiff and for her amended and substituted complaint, herein, states that she is the child and sole surviving heir-at-law of James G. Webb, deceased, by his first marriage and that the defendant, Nancy J. Webb, is his widow, and stepmother of the plaintiff.

"That on April 7, 1902, James G. Webb and his first wife, mother of plaintiff, sold a parcel of real estate in Fort Smith, Arkansas, same being their homestead and that of plaintiff, and invested the proceeds of said sale in the purchase of lot three (3) in block sixty-three (63) of the City of Fort Smith, Arkansas, the deed having been executed to James G. Webb and his heirs, and recorded Deed Record 'MM,' at page 415.

"That shortly thereafter the first wife of James G. Webb, and mother of plaintiff, died, and James G. Webb later, intermarried with the defendant, Nancy J. Webb.

"Plaintiff states that on May 21, 1928, a conveyance of the said property was made to one Frances Kemp, and that said deed is recorded in Deed Record 49, page 540, and that on the same date Frances Kemp executed a deed to James G. Webb and Nancy J. Webb, his wife, thereby purportedly vesting an estate by the entirety in them. The later deed is shown of record in Book 31, page 499.

"Plaintiff states that James G. Webb died on or about July 18, 1928, and that on March 17, 1939, the defendant, Nancy J. Webb, as his widow, attempted to convey the property aforesaid to her co-defendant, Viola Earle Rigney, as is shown by a warranty deed recorded in Book 68, page 640.

"Plaintiff states that at the time the defendant, Nancy J. Webb, induced the said James G. Webb to transfer the title in said property so as to attempt to create an estate by the entirety, the said James G. Webb was, by reason of age, senility, feeble-mindedness and the undue influence of his wife over him, lacking in his capacity to understand what he was doing or the effect of his acts, so that he was entirely lacking in capacity to make such conveyance; that the defendant paid no consideration for said conveyances, but designedly took advantage of her relationship with James G. Webb, and of his enfeeble mind and intellect, knowing him to be about to die, in an attempt to defraud this plaintiff of her inheritance; and that the deeds executed as a result should be cancelled and set aside.

"Plaintiff states that she resides in Little Rock, Arkansas, and has so resided at all times hereinbefore mentioned, and that she knew nothing of the things and matters herein complained of, until long after they had occurred, and that when she did learn of said fraudulent transactions, she immediately filed her suit in this court."

The prayer was for quieting of title in plaintiff, as sole heir of James G. Webb, and for other relief. No exhibits of any kind were attached to the original com-

plaint, or to the amended and substituted complaint. Nancy J. Webb was constructively summoned and no pleading was filed by her, and no default taken. Violia Earle Rigney filed against the complaint a general demurrer: "That the said amended complaint does not contain facts sufficient to constitute a cause of action." The chancery court sustained the demurrer and dismissed the plaintiff's complaint upon her refusal to plead further; and the plaintiff has brought this appeal.

For reversal, appellant contends: (1) that a complaint which states a cause of action, although defectively, affords no ground of demurrer; (citing *Shreve* v. *Carter,* 177 Ark. 815, 8 S. W. 2d 443); and (2) that every reasonable inference in favor of the complaint should be made, and if, when so considered, there is a cause of action stated, then the demurrer should be overruled; (citing *Claxton* v. *Kay,* 101 Ark. 350, 142 S. W. 517, Ann. Cas. 1913E, 972; *McLaughlin* v. *Hope,* 107 Ark. 442, 155 S. W. 910, 47 L. R. A. N. S., 137; *Sharpe* v. *Drainage District,* 164 Ark. 306, 261 S. W. 923; and *Dillinger* v. *Pickens,* 200 Ark. 218, 138 S. W. 2d 388).

On the other hand, for affirmance, appellee claims that the demurrer was properly sustained: "Upon the ground that appellant was barred by limitations and laches"; and appellee cites *McGinnis* v. *Less,* 147 Ark. 211, 227 S. W. 398, where this court said:

"Either laches or the statute of limitations may be raised by demurrer in a suit in chancery, where the allegations of the complaint are sufficient to show the existence of these defenses. In such an action these defenses go to the equity of the complaint, and may, therefore, be raised by demurrer."

The test is whether the complaint shows limitations or laches on its face. If it does, then the defenses can be raised by demurrer; otherwise, the defenses should be pleaded by answer and shown by evidence. Since the action of the trial court in sustaining the demurrer is defended on the ground of (1) limitations, and (2) laches, we proceed to consider these points.

## I. *Limitations.*

James G. Webb made the deed (which led to the entirety estate) in 1928, and died the same year. His widow did not convey the land to appellee until 1939. This suit was instituted in 1943. When did limitations commence to run? If limitations started on the death of James G. Webb then appellant is barred. If it started on the execution of the deed to appellee, then appellant is not barred by limitations.

In *Brinkley* v. *Taylor*, 111 Ark. 305, 163 S. W. 521, the widow had only a dower right, but by adverse holding she acquired the fee as against the heirs, even though they never had dower assigned to her. We said of her entry on the land: "This entry should be presumed to be permissive, and not in hostility to the heir unless that fact affirmatively appears." In that case, the nature of the adverse holding was shown by evidence. In the case at bar no such adverse holding is alleged in the complaint.

In *Boyd* v. *Epperson*, 149 Ark. 527, 232 S. W. 939, the widow, Frances Harmon, occupied the land from 1911 until 1919 under a will which devised her the land in fee simple. After her death the pretermitted children of the husband brought suit against the heirs of the widow; and this court, in holding that limitations did not begin to run against the pretermitted children of the husband *until the death of the widow,* said: "It was their duty to assign dower to the widow, and the widow's occupancy pending the assignment of dower was not an adverse holding. *Brinkley* v. *Taylor*, 111 Ark. 305, 163 S. W. 521. Therefore the statute of limitations did not begin to run in favor of the appellants until after the death of their mother, who was the widow of Mack Harmon, deceased."

In *Clark* v. *Wilson*, 174 Ark. 669, 297 S. W. 1008, this court reviewed a number of cases on this question as to when the holding by the widow is adverse to the heirs and quoted from *Watson* v. *Hardin*, 97 Ark. 33, 132 S. W. 1002, as follows:

" 'It is true that her claim and possession might have been of such a nature as to amount to an entire

disseizin of the heir and an entire denial of his rights, so as to result in an acquisition of title by adverse possession; but, before her possession could become adverse, it was necessary for her to first repudiate the title (of her husband) and to disavow any claim thereto as his widow; and it was also essential that notice of such disavowal by her of title as widow should be brought home to the heir.' ''

And then we continued:

''But it was there also said that the widow might acquire title by adverse possession against the heir if her disclaimer and hostile possession was so open and notorious as to raise a presumption of notice to him.''

*Reaves* v. *Davidson,* 129 Ark. 88, 195 S. W. 19, affords no support to appellee. In that case the ancestor, while insane, had conveyed lands and delivered possession to a third person. When his children brought suit to set aside the deed to the third person, we held that limitations started to run against the children on the death of the insane ancestor. But in that case the possession was held *by a stranger,* and such possession was necessarily notice to the children of the adverse claim. In the case at bar, possession was held by the widow; and under the authority of *Brinkley* v. *Taylor, Boyd* v. *Epperson,* and *Clark* v. *Wilson,* the heirs had a right to assume that the widow's possession was under her marital right of unassigned dower until notice of her adverse holding was notorious.

In the case at bar there was nothing alleged in the complaint to show any acts of the widow adverse to the heirs until the deed to the appellee herein. The complaint, copied in full, does not show any date of the recording of any of the instruments. So, on the face of the complaint, limitations was not shown and could not be pleaded by the demurrer, but should be set up by answer.

II. *Laches.*

There are no facts alleged in the complaint that show laches. Such facts may be shown by the evidence, but they do not appear on the face of the complaint.

Without citing and discussing our many cases on the elements of laches as a defense, we give the statement contained in 19 Am. J. 343, which comports with our cases, and is as follows:

"A suit is held to be barred on the ground of laches or stale demand where and only where the following facts are disclosed: (1) Conduct on the part of the defendant, or of one under whom he claims, giving rise to the situation of which complaint is made and for which the complainant seeks a remedy, as, for example, an invasion by the defendant of the complainant's right, such as the right to the possession of property; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred."

The case of *Norfleet* v. *Hampson,* 137 Ark. 600, 209 S. W. 651, does not support the appellee's contention of laches. In that case the complaint alleged full knowledge of all of the facts by the plaintiff for nineteen years, whereas, here, the absence of knowledge was alleged. This ignorance on the part of the appellant is no defense on limitations, but is a circumstance to be taken into consideration in the plea of laches. In *Norfleet* v. *Hampson, possession and use* of the lands by the defendants were alleged; whereas, in the case at bar, nothing is alleged about possession or use. In *Norfleet* v. *Hampson,* the complainant alleged that from 1903 to 1916 there was no payment by the defendants, and that during all that time the defendants were—to the knowledge of the plaintiff—appropriating all rents to defendants' own use; whereas, in the case at bar, the deed to appellee was executed only three and one-half years before filing of the suit; and this was the first act to show any claim adverse to the plaintiff; and, as we have previously stated, the widow is not presumed to be holding adverse

to the heirs until that fact is shown. In *Norfleet* v. *Hampson,* this court held, that with all of the facts recited in the complaint the plaintiff should have set out facts that negatived the idea of laches; whereas, in the case at bar, the facts are so meagerly set out that the case of *Norfleet* v. *Hampson* could have no application. The presence of facts was emphasized in the reported case. It is the absence of alleged facts confronting us in the case at bar. The rule in *Norfleet* v. *Hampson* finds no application here, because the complaint fails to show any facts suggesting laches. So, on the face of the complaint, laches was not shown, and could not be pleaded by the demurrer, but would have to be shown by the evidence.

It, therefore, follows that the trial court was in error in sustaining the demurrer, and the cause is therefore reversed and remanded with instructions to overrule the demurrer, and for further proceedings not inconsistent with this opinion.