**Roy TURNER et al., Plaintiffs In Error,**

**v.**

**Floyd G. HUBBELL and Lula May Turner, Defendants in Error.**

**No. 36613.**

Supreme Court of Oklahoma.

July 5, 1955.

Rehearing Denied Oct. 11, 1955.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, for plaintiffs in error.

Richard James, Stroud, for defendants in error.

WILLIAMS, Vice Chief Justice.

This action was brought by Lula May Turner and Floyd G. Hubbell, hereinafter referred to as plaintiffs, against Roy Turner and others, hereinafter referred to as defendants, to quiet the title to 160 acres of real property situated in Lincoln County, Oklahoma. Plaintiff Lula May Turner is the surviving widow of Joseph Turner, Jr., who died intestate and without issue in 1917, and defendants are the collateral heirs of the said Joseph Turner, Jr. Plain-

tiff, Floyd G. Hubbell is the lessee under an oil and gas lease covering the property involved executed by plaintiff Lula May Turner on August 4, 1953.

Plaintiffs' petition sets up two allegations upon which their claim of title is based. The first is that the property had been acquired through the joint efforts of plaintiff, Lula May Turner, and her deceased husband, Joseph Turner, Jr., who died without issue, and that by the laws of descent and distribution the property descended to plaintiff, Lula May Turner, to the exclusion of the collateral heirs of her deceased husband. The second ground set up by plaintiffs is the alleged adverse possession of the premises by plaintiff Lula May Turner for more than 15 years.

Upon trial being had to the court, judgment was rendered for plaintiffs from which defendants appeal.

Defendants submit the issues involved in this appeal under two specifications of error. First, that the property was not acquired by the joint industry of Lula May Turner and her husband, Joseph Turner, Jr., and second, that the widow did not hold the lands in controversy adversely to the collateral heirs of her deceased husband as such lands constituted the homestead of the deceased and the surviving widow. We are of the opinion that both specifications are well taken.

The evidence reveals that the property in question was patented to Joseph Turner, Sr., who died testate in 1904. Under the provisions of the will of said decedent the property was devised to his widow, Mary Turner, for her life with full power of disposal, and upon her death without disposing of the property, to Joseph Turner, Jr. The will further provided that during Mary Turner's lifetime, Joseph Turner, Jr., was to manage the property and pay his mother one-third of the market value of all crops grown thereon; that if Mary Turner disposed of the property, she was to pay each of five other children $10 each, and if the property remained undisposed of at her death, Joseph Turner, Jr., was to make the $10 payment to each of his brothers and sisters. Mary Turner died July 27, 1913,

without having disposed of the property. The will of Joseph Turner, Sr. was admitted to probate in the County Court of Lincoln County, and on April 24, 1914, a final decree was entered in said court distributing the property to Joseph Turner, Jr., as devisee under the will of Joseph Turner, Sr. Joseph Turner, Jr. and Lula May Turner were married on May 28, 1913, and thereafter resided on the property here involved. Joseph Turner, Jr., died intestate and without issue on February 17, 1917, at which time the property was the homestead of Joseph Turner, Jr., and Lula May Turner. Lula May Turner has ever since remained in the exclusive possession of such property.

 Since Joseph Turner, Jr., died intestate and without issue, the devolution of the property upon his death is determined by the second subdivision of 84 O.S. 1951 § 213, which is as follows:

"If the decedent leave no issue, the estate goes one-half to the surviving husband or wife, and the remaining one-half to the decedent's father or mother, or, if he leave both father and mother, to them in equal shares; but if there be no father or mother, then said remaining one-half goes, in equal shares, to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation. If decedent leave no issue, nor husband nor wife, the estate must go to the father or mother, or if he leave both father and mother, to them in equal shares: Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor, at whose death, if any of the said property remain, one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to the right of representation."

Thus it is apparent that if the property here involved was acquired by the joint industry of Joseph Turner, Jr., and Lula May Turner during coverture, it all descended to

Lula May Turner upon the death of Joseph Turner, Jr., but if such property were not so acquired, then Lula May Turner only inherited an undivided one-half interest therein and defendants inherited the other one-half interest therein. As already pointed out, Joseph Turner, Jr., received the property by virtue of the provisions of his father's will. In other words, he acquired it by devise. In the first paragraph of the syllabus in In re Stone's Estate, 86 Okl. 33, 206 P. 246, 247, we said that the phrase " 'that in all cases where the property is acquired by the joint industry of husband and wife during coverture' ", includes all property not owned by the husband or wife at the time of their marriage *or acquired by them respectively thereafter by gift, devise or descent.* Since the property in question was acquired by Joseph Turner, Jr., by devise, it is apparent that it was not acquired by the joint industry of husband and wife during coverture within the meaning of the above quoted statute. Therefore upon the death of Joseph Turner, Jr., the property descended one-half to plaintiff Lula May Turner, as surviving widow, and one-half to the defendant collateral heirs, subject, however, to the homestead right of plaintiff Lula May Turner.

Having disposed of plaintiff's claim of having acquired all the property in controversy by descent and distribution, we now turn to her contention of having acquired title by prescription by virtue of adverse possession for more than fifteen years.

 In this state, title by prescription is acquired by "occupancy for the period prescribed by civil procedure, or any law of this State as sufficient to bar an action for the recovery of the property." 60 O.S. 1951 § 333. In the case at bar, an action by the defendants for the recovery of the real property in question can only be brought within fifteen years after the cause of action for the recovery of such property shall have accrued. 12 O.S.1951 § 93. We are of the opinion, however, that no cause of action for the recovery of the property has as yet accrued to defendants. Although they are the owners of a one-half interest in the property, they are not en-

titled to possession of the property because of the homestead right of possession in the plaintiff Lula May Turner. The property, being the homestead of Joseph Turner, Jr., and his wife, was not subject to administration proceedings upon his death. Kimberlin v. Anthony, 124 Okl. 170, 254 P. 1. It immediately became, by operation of law, what is commonly called the "probate homestead", and no formal order setting the property apart as a homestead was necessary. 58 O.S.1951 § 311; Ringer v. Byrne, 183 Okl. 46, 80 P.2d 212; Kimberlin v. Anthony, supra. This homestead the widow had the exclusive right to possess and enjoy for and during her lifetime or until she abandoned it. Sharp v. Jones, 171 Okl. 471, 43 P.2d 427; Herren v. Herren, 152 Okl. 281, 4 P.2d 92. The homestead right of such widow is superior to the right of her "co-heirs" to a property interest therein, the enjoyment of the property interest of such heirs being suspended during the life of the widow, or until her voluntary abandonment. In re Gardner's Estate, 122 Okl. 26, 250 P. 490. There is no evidence in the case at bar of an abandonment of the homestead by plaintiff, Lula May Turner, and, in fact, no such contention is made by either side. Under such circumstances, no cause of action for recovery of possession of the property has yet accrued to defendants. No such cause of action will accrue until the death of Lula May Turner or her abandonment of the homestead. Certainly, then, such cause of action cannot properly be held to have become barred by the passage of time when it has not yet even accrued. And until such cause of action has accrued and become barred by the passage of the necessary time thereafter, plaintiff Lula May Turner cannot acquire prescriptive title to the property as against defendants. Our conclusion in this regard is not without precedent. In 1 Am.Jur. 843, Adverse Possession, § 91, we find the following statement:

"During the time a widow is rightfully in possession of her husband's lands under her dower and quarantine rights, her possession is not adverse to the rights of the heirs, even

though she claims entire ownership. But it is otherwise after the period of rightful possession has expired."

And in 2 C.J.S., Adverse Possession, § 115(3), p. 668, the general rule is stated thusly:

"The widow's possession of her deceased husband's lands is not adverse to reversionary interests where she, or her successor, holds by virtue of homestead rights, although on abandonment or repudiation of her homestead hostility may be shown by the continued possession of the widow under independent claim of title, or by possession of her grantee."

In Tennison v. Carroll, 219 Ark. 658, 243 S.W.2d 944, 947, the Arkansas Court said:

"In Watson v. Hardin, 97 Ark. 33, 132 S.W. 1002, 1003, the court said: 'Now, the possession of the widow is not hostile to the title of the heir. The widow is entitled to the possession of the land as her homestead during her life. She holds the life estate and the heir the reversion. The possession of the widow is therefore not adverse to the heir. The general rule is that the statute of limitations does not run against the reversioner until the death of the tenant for life. Padgett v. Norman, 44 Ark. 490; Banks v. Green, 35 Ark. 84; Moore v. Childress, 58 Ark. 510, 25 S.W. 833; Ogden v. Ogden, 60 Ark. 70, 28 S.W. 796.' In reference to the widow's claim of adverse possession in that case, the court also said: 'It is true that her claim and possession might have been of such a nature as to amount to an entire disseisin of the heir and an entire denial of his rights so as to result in an acquisition of title by adverse possession; but, before her possession could become adverse, it was necessary for her to first repudiate the title (of her husband) and to disavow any claim thereto as his widow, and it was also essential that notice of such a disavowal by her of title as widow was brought home to the heir.' "

And see also, Crump v. Andress, Tex. Com.App., 278 S.W. 422; Miles v. Rhodes, 222 Ala. 208, 131 So. 633; Lake v. Ford, 244 Ky. 803, 52 S.W.2d 724; Falvey v. Hicks, 315 Mo. 442, 286 S.W. 385.

Plaintiffs cite Gassin v. McJunkin, 173 Okl. 210, 48 P.2d 320, 321, as stating the law applicable to this case. In that case the owner of the homestead property involved devised such property by will to his wife. Such will, however, made no provision for testator's children. The will was admitted to probate and decree of distribution entered distributing the property to the widow. The widow continued in possession of the property until her death some years later. The widow left a will by which she devised the property in question to the plaintiffs in the case, who claimed title by adverse possession as against a child of the first testator. We held that the hostile and adverse possession of the plaintiffs in that case only began to run from the date on which the will of the widow, in which she assumed to dispose of the property as she chose, was offered for probate. The last paragraph of the syllabus in that case is as follows:

"Possession of homestead lands by surviving spouse pursuant to void decree of distribution which notes their homestead character is referable to the right thereto given by section 1223, Okl. St.1931, and is not to be considered adverse to rights in remainder of child pretermitted by will of decedent, in the absence of such positive acts of disloyalty to remainderman as would preclude want of knowledge by him of adverse claim to title by possessor."

That case, however, is in no way contrary to the other cases hereinabove cited. In that case the widow's claim of title was independent of any claim of title she might have had under the laws of succession or homestead right, and we were concerned only with the question of sufficiency of notice to the heir that she was claiming the property under such independent claim rather than claiming only as surviving widow. In the case at bar the only basis for claim of title of Lula May Turner, plaintiff, is

that accruing to her as the surviving widow of Joseph Turner, Jr. She has no independent claim of title to assert, at least so far as the record herein reveals.

Since the only claim of plaintiff, Lula May Turner, to title to the property here involved, is that accruing to her as surviving widow of Joseph Turner, Jr., and since as such surviving widow she is entitled to the exclusive possession of such property, it being the probate homestead, we conclude that her possession has been and is lawful and in no way adverse to defendants and that she has not acquired title by prescription thereto by virtue of such possession.

The judgment of the trial court is reversed and the cause remanded with instructions to render judgment in accordance with the views herein expressed.

JOHNSON, C. J., and CORN, DAVISON, HALLEY and JACKSON, JJ., concur.

BLACKBIRD, J., concurs in result.