ORES HEAD ET UX *v.* JESS FARNUM

5-4426                                                425 S. W. 2d 303

Opinion delivered March 18, 1968

*Joe H. Hardegree,* for appellants.

*James R. Hale,* for appellee.

Paul Ward, Justice. This is an appeal from a judgment (based on a jury verdict) awarding Jess Farnum (appellee) a fee simple title in 120 acres of land. To better understand how the litigation arose and the issues raised, we set out below the background facts which are not in dispute.

*Facts.* (a) Jacob Stottler was the owner of the land in 1900. He died intestate in 1919, survived by his wife (now deceased) and by two sons and one daughter, viz: Edward, George, and Elizabeth.

(b) Elizabeth, in 1920, conveyed her one-third interest in the land to George. She married a Mr. Head and they had one son, named Ores Head, who is the appellant here.

(c) Edward died, intestate, in 1944, leaving no children.

(d) George, with his wife Florence, lived together on the land until he died, intestate, in 1953, leaving no offspring. At his death Florence (later married to Baucom) continued to live on the land for an undisclosed period of time, but conceded to be less than seven years. However, she continued to pay the taxes until 1963 when she deeded the land to Howard P. Yates, Jr. for $1,000. In the same year Yates deeded the land to appellee for $4,000.

*Litigation.* In 1966 appellee filed a complaint against Ores Head and wife, alleging: (a) Appellee is the owner in fee simple of the said 120 acres of land, based on the deed from Yates who had received the deed from Florence; (b) In 1965 Ores and his wife unlawfully entered upon the land and wrongfully cut and removed therefrom large amounts of timber valued at $2,000. The prayer was for (1) possession of the land, and all other proper relief, (2) and judgment for the timber removed. [Item (2) is not an issue here.]

In answer to the above complaint Ores entered a general denial, and further stated that he "owns and occupies the land in question by right of heirship and that he has a title superior to the title, if any, of the Plaintiff, to said lands". He also reserved the right to make further answer.

The trial court, over appellants' objections, allowed appellee to introduce testimony to show Florence obtained title to the land by adverse possession, and that she had a fee simple title when she deeded the land to Yates in 1963. Appellants' objection was based on the ground that appellee did not plead title based on that ground, but, under our view hereafter expressed, we deem it unnecessary to decide that issue. Thus the matter was tried, and then presented to the jury on the following instruction:

> "Do you find by a preponderance of the evidence that Florence Stottler Baucom held the lands in question by adverse possession for seven years or more from death of George Stottler in 1953 to sale of property in 1963?"

The jury's answer to the above interrogatory was "Yes". Then the court entered judgment in accord with the verdict, hence this appeal.

Seeking a reversal of the judgment, appellants rely on seven separate points. The first six points pertain to the instructions given by the trial court, to the right of appellee to introduce testimony as to adverse possession on the part of Florence, and to the court's refusal to direct a verdict in favor of appellants. We deem it unnecessary to discuss these points because we have concluded the case must be reversed on the seventh point, which challenges the sufficiency of the evidence to support the jury verdict.

The undisputed facts set out previously reveal that: Ores was the owner of an interest in the land. He in-

herited a 1/6th interest from Edward and he was the sole heir of George. The extent of this last interest depends on the extent of the interest which George held as an ancestral estate. See Ark. Stat. Ann. § 61-206 which gives Florence (his widow) one-half of the portion held by her husband as a new acquisition. From this it follows that while Florence remained on the land after the death of her husband she had a legal right to do so, as his widow, and she was also occupying the land as a co-tenant with Ores.

In view of the above situation it is our conclusion that the record reveals no substantial evidence to support the jury verdict. The pertinent parts of appellee's testimony is set out below.

Florence testified:

"Q. Did you claim to own it?

A. I did. I was his only heir.

Q. Now, you say after Mr. Stottler died, you claimed to own the property?

A. Well, I thought I did.

Q. You thought you owned it?

A. I sure did.

Q. How long did you think you owned it?

A. Well, after he passed away I was left as his heir. I was his widow and I'd be his heir and his mother told me and him both time and time again that for taking care of her, she wanted me to have her part.

Q. Well, you continued to think you owned it, as I understand it.

A. I did.

Q. Well, Mrs. Drain (Florence), you did say you claimed the property?

A. Yes, everybody told me it was mine.

Q. How long did you claim it?

A. After he died? Well, I claimed it as long as I paid taxes on it. I was told it was mine if I paid the taxes and I paid the taxes for about ten years before anybody come up and said they wanted it.

Q. Mrs. Drain, at the time you sold it to Howard and Billie Lou Yates, did you claim to own it?

A. I certainly did. I paid the taxes."

\* \* \*

"Q. You took it? Yes, ma'am, you took it and you thought you had a right to sell it?

A. I certainly did."

Orville Yates, who was familiar with the land and knew George Stottler, testified:

"Q. Mr. Yates, following the death of George Stottler, do you know who claimed to own that land?

A. Well, his widow.

Q. Florence Baucom?

A. Yes.

Q. Did you ever know of anyone else making any claim to it at any time from the time of the death of George Stottler up until the time she sold it?

A. No, sir, I didn't."

The above testimony falls far short of meeting the requirements set out in many decisions of this Court, some of which are noted below.

In *Watson* v. *Hardin*, 97 Ark. 33 (p. 36), 132 S. W. 1002, this Court quoted with approval the following statement:

> "'It is well settled by the authorities that this possession must be actual, open, continuous, hostile, exclusive and be accompanied by an intent to hold adversely and in derogation of and not in conformity with the right of the true owner. . . It must be hostile in order to show that it is not held in subordination and subserviency to the title of the owner.'"

There, the Court also said:

> "The widow is entitled to the possession of the land as her homestead during her life; she holds the life estate and the heir the reversion; the possession of the widow is therefore not adverse to the heir."

In *Brinkley* v. *Taylor*, 111 (p. 309) Ark. 305, 163 S. W. 521, we find this statement:

> ".It is settled that if a widow conveys her dower interest before it is assigned to her, the heir may recover the land from her vendee, and the statute of limitations is set in motion against the heir when her vendee enters into the possession."

In *Mills* v. *Pennington*, 213 Ark. 43 (p. 47), 209 S. W. 2d 281, we said:

> "The law is well settled that a life tenant is entitled to possession of premises to which the estate pertains, and it is the tenant's duty to pay taxes."

The Court also held that the heirs had a right to assume the widow's possession was under her marital right of unassigned dower until notice of her adverse holding

was notorious. To the same effect, it was stated in *Tennison* v. *Carroll*, 219 Ark. 658 (p. 663), 243 S. W. 2d 944, that:

"Even if a widow disavows her homestead and claims as a tenant in common, her possession and occupancy is presumed to be permissive and not hostile to her co-tenants unless the fact of hostility affirmatively appears."

The judgment is reversed, and the case is remanded for any further requested proceedings consistent with this opinion.