INMAN v. QUIREY.

Opinion delivered April 23, 1917.

1.  HOMESTEAD—DUTY OF WIDOW TO PAY TAXES.—Where the widow has the exclusive right to the possession of homestead property, it is her duty to pay the taxes thereon.

2.  TAX SALE—PURCHASE BY PARTY BOUND TO PAY.—A purchase at a tax sale made by one whose duty it is to pay the taxes, shall operate as payment only, and he acquires no rights as against a third party by a neglect of the duty which he owed to such party. One who is in possession of land and receiving the rents and profits, can not acquire a title to it by a purchase for taxes; such purchase would operate only as a payment of the taxes.

3.  TAX SALES—PURCHASE BY CO-TENANT.—A co-tenant can not add to or strengthen his title by purchasing the title to the entire property from a stranger who has purchased the premises at a tax sale.

4.  TAX SALES—CONVEYANCE BY PURCHASER TO LIFE TENANT.—J., a widow, together with her son G., held possession of certain property as a homestead. The same was sold for taxes and purchased by appellant, who, before he acquired title under Kirby's Digest, § 5061, reconveyed to J. and G. *Held*, the conveyances operated as a payment of the taxes and a redemption by J. and G., and extinguished appellants' tax title, so that it could in no way operate as color of title in appellant.

5.  CO-TENANTS—RIGHTS INTER SE—POSSESSION—LACHES.—The possession of one co-tenant is the possession of all and laches can not bar the right of entry to a co-tenant until the latter's disseisin has been affected by some notorious act of ouster brought home to his knowledge.

6.  FRAUD—LIFE TENANT AND THIRD PARTY—COLLUSION.—Where the evidence establishes a collusive attempt on the part of a life tenant and a third person to acquire the whole title to the land, such transaction will be deemed fraudulent and void and will be set aside in equity.

7.  CO-TENANCY—PURCHASER OF INTEREST—DUTIES.—One who purchases the entire title to lands from one of several co-tenants, with knowledge of the facts, becomes a tenant in common with the other parties interested, and is charged with the same duties and obligations towards his co-tenants as any other tenant in common would

be. He can not claim adversely to their interest until he had notified them of that fact.

8. DEEDS—DELIVERY TO BECOME EFFECTIVE UPON THE HAPPENING OF A CONDITION.—Parol evidence is admissible to show that deeds, delivered to the grantees, were not to become effective until the happening of a certain condition, and such a delivery held not to be in escrow.

Appeal from Lawrence Chancery Court, Eastern District; *George T. Humphries,* Chancellor; affirmed.

*W. A. Cunningham, O. C. Blackford, W. P. Smith* and *G. M. Gibson,* for appellant.

1. Appellant held actual possesion under a tax title for more than two years. Kirby's Digest, § 5061; 79 Ark. 364.

2. Appellees are barred by laches. 20 Ark. 381; 73 Am. Dec. 497; 38 Cyc. 4041; 123 La. 835; 49 So. 590.

3. In any event the decree should be modified so as to permit recovery by each of the plaintiffs of the interest only, which the evidence shows each of them to have had at the time the suit was filed, and not to include the interest deeded to them by Baker and Sloan before the filing of the suit. Kirby's Digest, § § 5999, 6001-2, 6004. There were no conditions in the deeds—they were delivered at once. 110 Ark. 425; 123 *Id.* 601. Baker and Sloan should have been made parties.

4. One cotenant can recover only such interest as he may prove himself entitled to. 43 Neb. 368; 47 Am. St. 765; 91 Va. 344; 50 Am. St. 838, 842, note; 156 Mo. 566; 57 S. W. 719; 79 Am. St. 540; 26 Mo. 291; 13 *Id.* 335.

*Baker & Sloan,* for appellees.

1. Appellant did not acquire title by limitation. The tax sale was prearranged and a fraud. It was Mrs. Jones' duty to pay the taxes, as she was in possession enjoying the rents and profits. Kirby & Castle's Dig., § § 8780, 8785; 59 Ark. 364; 95 *Id.* 333. This is true, also, of Gus Holman. 33 Ark. 267, 275; 32 *Id.* 97, 111; 46 *Id.* 504; 53 *Id.* 428; 14 S. W. 646; 22 Am. St. 231; 62 Ark. 188; 35 S. W. 788. One can not buy at his own tax sale, and

quiet his title. 99 Ark. 543; 139 S. W. 639; 31 Ark. 334, 344. The two years' statute does not apply. 71 Ark. 273.

2. A tenant in common is under the same disability. 55 Ark. 104; 40 *Id.* 42; 49 *Id.* 242; 38 Cyc. 48. The tax sale was void. 107 Ark. 374, 379. Inman acquired no title by the sale. 71 *Id.* 310.

3. The tax title was extinguished by the redemption.

4. Certain of the appellees were minors. Kirby & Castle's Dig., § 6003; 87 Ark. 428, 430.

5. The charge of laches is not sustained. 94 Ark. 122, 126; 89 *Id.* 23; 146 S. W. 135.

6. No statutory ground is alleged in the motion to modify. Kirby & Castle's Digest, § § 5160-2-3; 83 Ark. 17; 104 *Id.* 499; 120 *Id.* 255. He had no meritorious defense. But Baker and Sloan were made parties, and their rights adjudicated. The deeds were shown not effective to convey present title. 76 Ark. 140; 80 *Id.* 8, 11.

7. All defects of parties were wavied. Kirby & Castle's Digest, § 7538; 37 N. Y. 372; 85 S. W. 1134; 117 Ark. 544; 75 *Id.* 288; 91 *Id.* 252, etc.

STATEMENT BY THE COURT.

On November 9, 1914, appellees instituted this action in the chancery court against appellants to recover an undivided four-fifths interest to one hundred and sixty acres of land in Lawrence County, Arkansas, and for an accounting of the rents and profits therefrom.

J. E. Inman, one of the appellants, filed an answer in which he claimed title to the whole of said land by purchase and by adverse possession under a tax title. He also pleaded that appellees were barred of relief by laches.

The material facts are as follows: Squire Holman originally owned the land and lived on it with his wife and their minor children. He died in 1888, leaving surviving him, as his widow, Mrs. M. E. Holman and ten children as his heirs at law. Six of these children were borne him by Lizzie Holman. his first wife, who died while he lived in Kentucky. Holman married again in

Kentucky and the remaining four children were born of his last marriage. Holman came to Arkansas about three years before his death with his wife and part of his children and a part of them remained in Kentucky, where they still reside. When he came to Arkansas, he established his homestead on the one hundred and sixty acres in controversy, and lived there until the time of his death. After his death his widow continued to occupy the homestead with some of her children. She permitted the land to be sold for taxes, but it was redeemed from the tax sale, and she continued to reside on it thereafter with her son, Gus Holman. On the 11th of June, 1906, the land was again sold for taxes and the appellant, J. E. Inman, became the purchaser. On June 19, 1908, a clerk's tax deed was executed to Inman to the whole one hundred and sixty acres. It is conceded that the tax sale was void. On April 10, 1910, Inman and wife conveyed to Mrs. M. E. Jones, eighty acres of the land and the consideration recited in the deed was $200. On April 6, 1910, Inman and wife conveyed eighty acres of the land to Gus Holman and the consideration recited in the deed was $200. On April 13, 1912, Mrs. M. E. Jones conveyed to J. E. Inman the eighty acres which he had conveyed to her, and the consideration recited in the deed was $450. On the same day, Gus Holman reconveyed to Inman the eighty acres which had been conveyed to him by Inman, and the consideration recited in the deed was $800. Mrs. M. E. Jones and her son Gus Holman continued in possession of the land until after they reconveyed it to Inman on April 13, 1912.

At the time of the institution of this action, some of the children of Squire Holman had died intestate and left surviving children of their own, all of whom are made parties to the action. Inman purchased the interest of some of these so that at the time the decree in this case was entered of record he owned by purchase an undivided one-fifth interest in the property and appellees owned four-fifths interest in it.

The chancellor found that the sale by Inman to Mrs. M. E. Jones and Gus Holman amounted to a redemption of the lands from the tax sale and operated as a payment of the taxes, and that Inman's plea of adverse possession for two years under the tax title was not available to him as a defense to this action, and that he had not held the lands adversely for a sufficient period of time to acquire title by virtue of the seven years' statute of limitation. Appellees were decreed to be the owners of an undivided four-fifths interest in the lands, and appellant Inman was decreed to be the owner of an undivided one-fifth interest therein, and also to be the owner of the undersigned power of Mrs. M. E. Jones, who had married a man named Jones a few years after her former husband, Squire Holman, had died. After this decree had been entered of record, Inman found out that the heirs of Squire Holman had executed a deed to Basil Baker and Horace Sloan to a one-half interest in their undivided interest in the lands. Baker and Sloan were then asked to be made parties to the suit and the court granted the request. The court then found that the deeds executed to Baker and Sloan were not intended to take effect until the final determination of the lawsuit, and that in the absence of said deeds, appellees had a right to bring proceedings to recover their interest in the premises. There was also a final decree in which Inman was charged with the rents received by him and allowed the improvements made by him. Inman has duly prosecuted an appeal to this court.

HART, J., (after stating the facts). (1) Squire Holman owned the lands in controversy as his homestead at the time of his death. About two years after his death his widow, Mrs. M. E. Holman, married a man named Jones. She still continued to reside upon the land with some of her children. At the time the lands were sold for taxes on June 11, 1906, for the taxes of 1905, Mrs. M. E. Jones resided on the land with her son, Gus Holman. She had a life estate in the lands by virtue of her home-

stead interest. She had the exclusive right to the possession of the lands and it was her duty to pay the taxes thereon.

In *Rodman* v. *Sanders,* 44 Ark. 504, it was held that one who is in possession and receiving the rents and profits of land can not acquire a title to it by a purchase for taxes, and that such acts only operate as a payment of the taxes.

(2-3) In *Cocks* v. *Simmons,* 55 Ark. 104, it was held that a tenant in common of land can acquire no title to the interest of his cotenants by purchase at a sale of the whole for delinquent taxes and that his purchase amounts to no more than the payment of the taxes and gives him no right except to demand contribution from his cotenants. Many cases to the same effect are cited in a case note in 8 A. & E. Ann. Cas. at page 988. Various reasons have been assigned for the rule and the one most frequently given is based upon a community of interest in a common title creating such a relation of trust and confidence between the parties that it would be inequitable to permit one of them to do anything to the prejudice of the other in reference to the property so situated. Judge Cooley says that a purchase made by one whose duty it was to pay the taxes shall operate as payment only, and that he shall acquire no rights as against a third party by a neglect of the duty which he owed to such party. Cooley on Taxation, 3 ed., vol. 2, p. 965. This rule applies with especial force to Mrs. M. E. Jones, because she had a life estate in the lands, was entitled to the exclusive possession of them, and it was her duty to pay the taxes. If she had purchased, or procured any one to purchase for her, the lands at a sale thereof on account of the nonpayment of taxes, her purchase would be void and operate as a payment of the taxes. *Swan* v. *Rainey,* 59 Ark. 364; *Rowland* v. *Wadly,* 71 Ark. 273. The rule is founded on public policy and is designed not only to protect the interest of the parties represented,

but as a guard against temptation on the part of the representatives. For the same reason it is said that a cotenant can not add to or strengthen his title by purchasing the title to the entire property from a stranger who has purchased the premises at a tax sale, as the law will not allow that to be done indirectly which can not legally be accomplished directly. See case notes to 8 A. & E. Ann. Cas. at 989 and 116 Am. St. Rep. 367, and 75 Am. & St. Rep. at 239; *Phillips* v. *Wilmarth*, 98 Ia. 32; 66 N. W. 1053, and *Duvois* v. *Campau*, 24 Mich. 360.

Inman purchased the land at the tax sale and received the clerk's tax deed therefor in April, 1908. He conveyed a part of the land back to Mrs. Jones on April 10, 1910, and a part of it to Gus Holman on April 6, 1910. During all this time Mrs. Jones and Gus Holman had been in possession of the land. The reconveyance to them operated as a payment of the taxes. On April 13, 1912, Mrs. Jones and Gus Holman reconveyed the lands to Inman and he went into possession of them. This suit was not brought until November 9, 1914, hence it is insisted that Inman acquired a title by adverse possession under the tax deed which was executed to him on June 19, 1908, although it is conceded that the sale for taxes was void. It is contended that this tax deed notwithstanding the tax sale was void and the conveyance from Inman to Mrs. Jones and Gus Holman in 1910, operated as a payment of taxes, remained as color of title and entitled him to the benefit of section 5061 of Kirby's Digest in regard to the time in which suits may be brought against the purchaser at a tax sale. They rely upon the cases of *Brandon* v. *Parker*, 124 Ark. 379, and *Moore* v. *Morris*, 118 Ark. 516.

(4)  In the case of *Moore* v. *Morris*, the title to the land was wrested from the holders of the record title by adverse possession for seven years. The court held that notwithstanding this fact, the record title continued in existence and remained as color of title so that the holder

of the record title could reacquire title to the lands by payment of taxes for seven years under section 5057 of Kirby's Digest, the lands being wild and unoccupied lands. This rule was extended in *Brandon* v. *Parker*. There a person held lands under a donation deed and another person entered in possession of them within two years and acquired title by adverse possession. It was held that the donation deed of the first owner, although the lands were forfeited to the State under a void tax sale, remained as color of title so that the holder of it could acquire title by adverse possession for two years under section 5061 of Kirby's Digest. The effect of the holding in those two cases was that although the first owner lost his title by the fact that another had acquired title by adverse possession, his deed or paper title not having been canceled by any order or judgment of the court, remained as color of title. As we have already seen, when Inman conveyed the lands to Mrs. Jones and to Gus Holman, in April, 1910, he had not acquired title to the lands under section 5061 of Kirby's Digest. Hence his reconveyance of the lands to them operated as a redemption of the lands and as the payment of the taxes by Mrs. Jones and Gus Holman. The deeds to them as fully extinguished the tax title of Inman as could have been done by any order or judgment of a court, and it could no longer remain as color of title. The deeds from Inman back to Mrs. Jones and Gus Holman having operated in law as a payment of the taxes, Inman had no further rights in the premises under the tax sale and could not thereafter be considered as a tax purchaser at all. To hold otherwise would prevent the repurchase by Mrs. Jones and Gus Holman from operating in law as a payment of the taxes.

(5) It is also contended that the appellees are barred of relief in this case by laches. There is a principle of law that where a cotenant buys in an outstanding title, his cotenant must elect within a reasonable time to

contribute his due proportion of the money expended in purchasing the outstanding title. *Brittin* v. *Handy,* 20 Ark. 381, and *Clements* v. *Cates,* 49 Ark. 242. This rule, however, has no application to a case like this; for the possession of one cotenant is the possession of all and laches can not bar the right of entry to a cotenant until the latter's disseisin has been effected by some notorious act of ouster brought home to his knowledge. *Parker* v. *Brast* (W. Va.), 32 S. E. 269. This rule applies with especial force for the reason that Mrs Jones had a life estate in the lands and was entitled to the exclusive possession of them, and it was her duty to pay the taxes. She and her son, Gus Holman, were in possession of the land up to the time they sold it to Inman in April, 1912. This action was brought on November 9, 1914, and was instituted within a reasonable time after appellees ascertained that Inman was claiming the land under his purchase of the land from Mrs. Jones and Gus Holman. Some of the parties interested lived in Kentucky and there were minors, and when all the circumstances are considered we are of the opinion that they were not barred of relief by laches.

(6) There is still another reason for upholding the decision of the chancellor. In a case note to 8 A. & E. Ann. Cas. at page 989, it is said that where a cotenant entered into negotiations with a third person by which such third person agrees to bid in the property at the tax sale and after the period of redemption expires to transfer it to the cotenant. or where, after a third person has bid in the property at a tax sale, a cotenant, by collusion with him, secretly redeemed the property and after the period of redemption has expired takes a deed from the purchaser; the transaction is fraudulent, and the purchasing tenant acquires no title as against his cotenants. Several cases are cited in support of the rule. In the cases of *Swan* v. *Rainey,* 59 Ark. 364, and *Rowland* v. *Wadly,* 71 Ark. 273, this court has distinctly recognized the rule

that where the evidence establishes a collusive attempt on the part of a life tenant and a third person to acquire the whole title to the land, such transaction will be deemed fraudulent and void and will be set aside in equity.

We think the testimony in the present case shows collusion between Mrs. Jones and her son on the one hand and Inman on the other to acquire the whole title to the land in fraud of the rights of their cotenants, at least after Mrs. Jones and Holman found out that Inman had become a purchaser at the tax sale. It is true that all of these parties deny this to be true, and state that the transaction had between them was in perfect good faith, but their testimony is contradicted by the testimony of other witnesses and also by certain contradictions and inconsistencies in their own testimony, which we will briefly attempt to point out.

It will be remembered that Mrs. Jones had had possession of the land since her husband died in 1888 and resided on it with her son, Gus Holman, at the time of the sale for nonpayment of taxes in June, 1906. Inman received his tax deed in April, 1908. Mrs. Jones and Gus Holman claimed that they began to pay him rent as soon as they found out he had received his tax deed. It does not appear that they made any effort to find out whether the tax deed was valid or not. It is now conceded that it was void. They say that they each paid Inman $200 for a deed to eighty acres of the land. Gus Holman admits that he had no money with which to pay the taxes on the land and no money with which to redeem it. It is not shown that Mrs. Jones had any money whatever. She lived on the place with her son, Gus Holman, and had no other occupation than that of housekeeper for him. Their answers as to where they got the $400 with which they bought the property from Inman are evasive, and it is fairly inferable that they did not have any such amount of money. In addition to this, a witness

testified that Gus Holman told him that they had let the land sell for taxes and were buying it in to strengthen their title. The amount of cleared land on the place was barely sufficient to afford a living for Mrs. Jones and her son, and it is not shown that they ever made anything above a living.

Inman testified that when he bought the land back he agreed to pay Mrs. Jones $450 and Gus Holman $800. He first stated that he paid them this amount in cash, but subsequently said that they owed him some accounts and that these accounts were taken as part payment of the land. They had been trading with Inman for several years, he said, and owed him on that account. This tends to show that Gus Holman and his mother did not have any money with which to purchase the land in 1910.

They testified that Inman paid them cash when they reconveyed the land to him in 1912. Inman first stated that he did not know that any one else had an interest in the land except Mrs. Jones and Gus Holman, but upon cross-examination he admitted that he talked with them before he bought the land and that they told him about the state of the title. He said they told him that Squire Holman had sold a tract of land owned by him in Kentucky, and had given the children there a part of the purchase price and had taken a part of it himself and had come to Arkansas, and bought the land in question with the understanding that his Kentucky children would claim no interest in any land he might purchase in Arkansas.

On the other hand, it is shown by appellees that the land sold by Squire Holman in Kentucky was owned by his first wife, and that his children by his first wife only took a part of the proceeds of the sale and let their father keep the other for the purpose of buying land when he came to Arkansas. Be that as it may, it is admitted by

Inman that he knew the land belonged to Squire Holman at the time of his death.

Another witness testified that he talked with Inman in 1908, and that Inman admitted to him then that he knew that other parties than Mrs. Jones and Gus Holman had an interest in the land.

(7) Still another witness testified that Inman wanted him to go in with him and buy the land from Mrs. Jones and Gus Holman, and said that Inman then knew that other parties had an interest in the land. It is true Inman denies these conversations, but when all the facts and circumstances are considered together, we think the evidence establishes a collusive attempt on the part of Inman and Mrs. Jones and Gus Holman to acquire the whole title to the land, and that this constituted a fraud which would warrant the chancellor in setting aside the sale to Inman. Besides that, as we have already seen, Inman knew that other persons were interested in the land when he purchased it from Mrs. Jones and Gus Holman, and that he could only acquire by purchase from them whatever interest they might have in the land. By his purchase he became a tenant in common with the other parties interested in the land and was charged with the same duties and obligations towards his cotenants as any other tenant in common would be. He could not claim adversely to their interest until he had notified them of that fact.

Counsel for appellant filed a motion to modify the decree on the ground that appellees by certain deeds had conveyed a one-half interest in their respective shares to Baker and Sloan, attorneys, and that they had concealed this fact until after the decree was entered of record. It appears from the testimony of Baker and Sloan that the appellees employed them to recover their interest in the land in controversy and agreed to pay them one-half of the lands so recovered. A written contract to this effect was entered into between the parties which

provided that Baker and Sloan were to have one-half of
whatever percentage of the land they recovered for ap-
pellees in the action. Subsequently the parties realized
that on account of the number of appellees and the fact
that they lived in various places, it would be difficult to
procure deeds from them in the event of a successful ter-
mination of the suit. Hence, they executed deeds to Ba-
ker and Sloan and delivered them to them with the ex-
press understanding that the deeds should not take effect
unless there was a recovery of the lands. The court held
that the deeds executed to Baker and Sloan were not in-
tended to take effect until the final determination of the
action, and that appellees had a right to bring proceed-
ings to recover their interest in the premises without
making Baker and Sloan parties. We think the decision
of the chancellor was correct.

(8) It is insisted that such holding violates the
well known rule of evidence that parol testimony is in-
admissible to vary the terms of a written instrument and
that the delivery of the deeds to Baker and Sloan was an
attempt to deliver the deeds in escrow to the grantees,
which can not be done, for a delivery to a stranger is es-
sential to an escrow. Conditions precedent are such as
must happen before the estate depending upon them can
arise. In the present case the deeds were delivered to
Baker and Sloan upon the express condition that the
deeds should not become effective until the successful
determination of the lawsuit. Thus they were not to be-
come operative until another part of the contract, a con-
dition precedent, was fulfilled. This court has held that
parol evidence tending to show that a written instrument
was not delivered as a present contract but was left in
the hands of the obligee on condition that it should not
become a binding contract except in a certain contingency
was competent. *Graham* v. *Remmel*, 76 Ark. 140; *Wor-
then* v. *Stewart*, 116 Ark. 294, and *Kimbro* v. *Wells*, 112
Ark. 126. For the same reason the delivery of the deed

subject to the condition precedent above referred to was not an attempt to deliver the deed in escrow to the grantees. Hence we think the decision of the chancellor on this branch of the case was also correct.

Moreover, Baker and Sloan were made parties to the proceedings after the original decree was entered of record and their rights were adjudicated. Therefore, no prejudice could have resulted to appellants because they were not made parties in the first instance.

We have carefully considered the record in regard to the rents and the improvements, both on appeal and the cross-appeal, and without protracting this opinion to set out the evidence and finding of the court on these points in detail, we deem it sufficient to say that we are of the opinion that the decree of the chancellor was correct on this branch of the case.

It follows that the decree in its entirety will be affirmed.

McCULLOCH, C. J., (concurring). I concur in the judgment of affirmance solely on the ground that a majority of the judges think the evidence was sufficient to warrant the finding that Inman participated in the conspiracy to permit the sale of the land for taxes in order to divest title out of the heirs of Squire Holman, and I am willing to yield my views on that disputed question of fact. But I am unwilling to declare the law to be that the purchase of the land from Inman by the widow and her son constituted a redemption from the tax sale so as to destroy the effect of the tax deed as color of title, and that in the absence of participation by Inman in the alleged wrongful conduct of the widow he should be denied the benefit of his occupancy under the deed as an investiture of title by operation of the statute of limitations.

My conclusion is that the question is controlled by the case of *Brandon v. Parker,* 124 Ark. 379, and that the distinction made by the majority between this case and

that one is unsound. That was a case where the effect of a tax deed as color of title was involved, and the title under the deed had been extinguished by adverse occupancy for the period of limitation, but the holder of the deed subsequently secured possession and claimed under the deed as color of title. We held that, notwithstanding the extinguishment of the title under the tax deed, it still subsisted as color of title. In the opinion in that case we said: ''The owner * * * lost his title, but his deed, not having been cancelled by any order or judgment of the court, remained as color of title and entitled him to the benefit of the provisions of section 5057 of Kirby's Digest, upon complying with its terms. * * * He had lost his title by the previous adverse occupancy, yet his deed was color of title and he entered into it and remained in possession of the land for more than two years, and he thereby became entitled to claim the benefits of section 5061 of Kirby's Digest.''

In the present case the tax deed had never been canceled. Its force as a conveyance of the title had been destroyed by the acts of the widow and her son, which a court of equity will treat as a redemption, but the deed itself did not cease to be ''that which, in appearance, is title, but which, in reality, is no title.'' *Beasley* v. *Equitable Securities Co.*, 72 Ark. 601.

Inman occupied the land under this deed more than two years, and, if he was free from participation in the wrong-doing of others with respect to the tax sale, his title by limitation would be complete under the law declared in *Brandon* v. *Parker, supra.*

Mr. Justice SMITH concurs.