DEDMON *v.* HAWKINS.

4-8207                                      203 S. W. 2d 183

Opinion delivered June 9, 1947.

*Sam M. Levine,* for appellant.

*Reinberger & Eilbott,* for appellee.

McHANEY, Justice. This action was brought by appellant in the Circuit Court in ejectment to recover the possession of lots 1 and 2, block 15 of E. J. Waters Addition to Pine Bluff, and in the alternative to recover betterments. On the motion of appellee and by consent the cause was transferred to the Chancery Court, where an amended complaint was filed alleging that appellant acquired the title to said lots by deed from the State to J. M. Shaw, one of her attorneys, on July 1, 1936, and by deed from Shaw to her and her then husband, Sam

Dedmon, on July 6, 1936, and by deed to her from her former husband, Sam Dedmon, on May 1, 1942, from whom she had been divorced. She also alleged that after thus acquiring the title to said lots she made improvements thereon to the extent of $1,000; that Sam permitted the appellee who is his daughter by a former wife, which former wife died intestate prior to appellant's marriage to Sam, to live with them on said lots as a member of the family; that he then began to be cruel to appellant, ran her off, leaving Sam and appellee in possession, and finally Sam left, leaving appellee in possession of the property which she refuses to surrender to her. The prayer was for possession and rent, but in the alternative for the reasonable value of the improvements.

Appellee answered with a general denial. She alleged also that she is the owner of said lots, first, because she secured a deed thereto from Sewer and Water District No. 6 of Jefferson County on October 29, 1945; and, second, that she and the four other heirs at law of their mother, Mattie Simmons Dedmon, inherited said property from their mother who died intestate in 1930, and who had inherited same from her father, Abner Simmons, and who was the owner thereof at her death. She further alleged that Sam Dedmon, her father, was living with her mother at the time she died, and that he permitted said property to forfeit and sell to the State for the taxes at a time when he was living thereon with her and his four other minor children, and that the purchase by Shaw from the State and the conveyance by Shaw to Sam and appellant amounted to a redemption from the tax sale only and conveyed no title, and that appellant well knew that the forfeiture and sale to the State and its purchase from the State were designed to defeat appellee and her brothers and sisters in their title to said property.

Trial resulted in a decree dismissing appellant's complaint for want of equity. The court found that appellee and her four brothers and sisters inherited the property from their mother on her death in 1930; that

Sam Dedmon permitted the property to forfeit for taxes (in 1932 for the 1931 taxes) at a time when he was living on said property with said children; that the deed from the State to Shaw and his deed to appellant and Sam Dedmon "was merely a redemption from tax forfeiture and amounted to only payment of the taxes by Sam Dedmon, who had the duty to pay such taxes, being in possession at the time in question and receiving the benefits therefrom; that such redemption gave Sam and Eula Dedmon no color of title at all—and that any subsequent deed from Sam Dedmon to Eula Dedmon passed no title to the property;" that on October 29, 1945, appellee secured a 'deed from Sewer and Water District No. 6, which had acquired it under foreclosure for nonpayment of assessments due it; and that the betterments claimed to have been made to the property by appellant were not made by her, but by Sam Dedmon. This appeal followed.

We think the court correctly held that the deed from the State to Mr. Shaw and his deed to appellant and Sam Dedmon, amounted to a redemption from the 1932 tax sale to the State for the 1931 taxes, and therefore conveyed no title to either or both of them. The parties are all Negroes. At the time of the forfeiture and sale to the State, Sam Dedmon and his five children were living in the house on these lots. On the death of his first wife Mattie who had inherited the property from her father, the title thereto passed to her children by Sam, subject to his curtesy interest therein, if any. At least he was the natural guardian of his minor children. He was occupying the property, receiving all the benefits therefrom and it was his duty to pay the taxes. Being under this duty, a court of equity would not permit him to profit by his own wrong by acquiring title to his own children's property. The fact that he had the deed from Mr. Shaw so drawn as to include appellant as one of the grantees and his deed to her in 1942 do not vest her with any title based on said tax sale, since the whole transaction was merely a redemption.

We think it was Sam Dedmon's duty to pay the taxes under § 13808 of Pope's Digest, as construed in *Smith* v. *Davis,* 200 Ark. 547, 140 S. W. 2d 126. This case also points out the distinction between it and *Wilkins* v. *Maggard,* 190 Ark. 532, 79 S. W. 2d 1003, relied on by appellant here, in that one Turner, son-in-law of Davis, was not a *bona fide* purchaser of the tax title from the State of Arkansas; but his deed from the State was merely a redemption thereof for his father-in-law, Bob Davis who was the life tenant, whereas, in the *Wilkins* v. *Maggard* case, the tax purchaser was a *bona fide* one. So, here, the tax purchaser, Sam Dedmon, was not a purchaser at all, but simply took a circuitous route to redeem the property.

As to the betterments claimed by appellant, the court correctly denied same because the improvements she claims to have made were not made under color of title as required by § 4658 of Pope's Digest. Neither the deed from Shaw to her and Sam nor his deed to her based on said forfeiture and sale to the State, constituted color of title. On this point appellant again relies on *Wilkins* v. *Maggard, supra,* but, as we said in *Smith* v. *Davis, supra,* ''the statute invoked by appellant and construed in the case of *Wilkins* v. *Maggard* (§ 10120, C. & M. Digest, now § 13884 of Pope's) has no application to one who has redeemed tax forfeited land from the State,'' and, therefore, appellant is not protected by the terms of that statute.

Moreover, it appears to us, as it did to the trial court, that the deed of Sewer and Water District No. 6 of Jefferson County to appellee, of October 29, 1945, title to said lots having been previously acquired by said District by foreclosure sale in the Chancery Court for delinquent assessments for the years 1934 to 1940, inclusive, and for 1942 and 1943 due to said District, conveyed as against appellant a good title to appellee free of all claims of appellant. No question is raised about the regularity or validity of the foreclosure sale, or of the District's title and right to convey to appellee. The

consideration paid by appellee, as expressed in the deed, is $284.40. As between appellee and her co-tenants, brothers and sisters, not parties to this action, no question is presented.

The decree is, accordingly, affirmed.