414

5-360    267 S. W. 2d 6

Opinion delivered April 5, 1954.

[Rehearing denied May 10, 1954.]

*Frank C. Douglas,* for appellant.

*Marcus Evrard,* for appellee.

Ed. F. McFaddin, Justice. In February, 1953, appellee, J. H. Seaman, for himself and the other heirs of F. G. Seaman, deceased, filed this suit agaii.st W. T. Ingram and Jiedel's, Inc., alleging: (a) that Frank G. Scaman died intestate in 1927, the owner of the Lot 9 here involved, survived by his wife, Paralee Seaman, and the plaintiffs, as his descendants and heirs at law; (b) that the Lot No. 9 was the homestead, occupied by the widow; (c) that Paralee Seaman married W. T. Ingram, in January, 1940, and she and Mr. Ingram con-

tinued to occupy the Lot 9; (d) that Paralee Seaman had suffered the Lot to become delinquent for general taxes and improvement assessments, although it was her duty as life tenant to pay the same; (e) that on March 11, 1940, Paralee Seaman (then Ingram) executed a deed to her husband, W. T. Ingram, involving said Lot 9, without the knowledge or consent of said plaintiff remaindermen, and Mr. Ingram then paid all delinquent taxes and improvement assessments; (f) that such payments were in effect a redemption by Paralee Seaman Ingram, the life tenant, and created no title adverse to the plaintiff remaindermen; (g) that immediately prior to the filing of this suit, the plaintiff learned that Mr. Ingram was claiming to be the owner of the fee simple title and had executed mortgages to his co-defendant, Jiedel's, Inc., and unless restrained, Mr. Ingram would further convey and cloud the plaintiffs' title, as remaindermen. The prayer of the complaint was that Mr. Ingram be adjudicated to hold title only for the life of Paralee Seaman Ingram, his wife; that the plaintiff and other heirs of F. G. Seaman be decreed to be remaindermen; that the mortgages to Jiedel's, Inc. be limited to the life estate title of Paralee Seaman Ingram; and that Mr. Ingram be enjoined from further clouding the title of the remaindermen.

The defendant, W. T. Ingram, in his pleading admitted that F. G. Seaman purchased the Lot 9, and that Paralee Seaman (now Ingram) was his widow; but Mr. Ingram claimed ''that after this defendant married Paralee Seaman she was unable to pay up the delinquent taxes and assessments against said property and in order to save some interest therein she deeded the property to this defendant by deed . . . in which she reserved the right to dower in case of the death of this defendant . . .'' Mr. Ingram asserted that he acquired the title from the State and also received deeds from the several Improvement Districts that had completed foreclosure proceedings, and held title to the Lot. He asserted that he held title by adverse possession against the plaintiffs. In the alternate, Mr. Ingram pleaded that if his title by adverse possession should

not be sustained then under the Betterment Statutes (§ 84-1121 Ark. Stats. and § 34-1423 Ark. Stats.) he was entitled to recover improvements to the amount of $7,000.00 which he had placed on the Lot. Jiedel's, Inc. claimed that the mortgages executed to it by Mr. Ingram were valid in every respect and superior to any claim of plaintiffs.

So much for the pleadings. The testimony established the death of F. G. Seaman; the homestead rights of his widow and heirs; the delinquency of the property; the widow's marriage to Mr. Ingram; her deed to him; and his acquisition of the outstanding tax titles. The main questions related to abandonment of the homestead, adverse possession, and the Betterment Statutes. On all of these questions, the Chancery Court found against W. T. Ingram and Jiedel's, Inc.; and they have appealed.

I. *Abandonment of the Homestead Estate.*[1] Mr. Ingram argues that Mrs. Paralee Seaman Ingram abandoned her homestead by actually moving away from the homestead and then executing the deed to him. We hold that there was no abandonment. Mrs. Paralee Seaman, along with her son, the appellee, J. H. Seaman, lived on the Lot 9 continuously from the death of Mr. Seaman until her marriage to Mr. Ingram. On January 15, 1940, Mrs. Seaman married Mr. Ingram, and for six or eight weeks the newly married pair lived away from Lot 9. Then Mrs. Ingram insisted that Mr. Ingram return with her to Lot 9. Accordingly, J. H. Seaman and his family moved elsewhere, and Mrs. Paralee Seaman Ingram and Mr. Ingram returned to Lot 9 and have continued to live there. Under the circumstances here involved, her short absence of six or eight weeks would not in itself constitute an abandonment of her homestead. She never acquired another one. See *Van Pelt* v. *Johnson,* 222 Ark. 398, 259 S. W. 2d 519.

The only right of Mrs. Paralee Seaman Ingram to return to the Lot 9 after her marriage to Mr. Ingram

---

[1] In Jones' volume, "Arkansas Titles," § 893 *et seq.,* there may be found a discussion on the nature of the homestead estate. In the case at bar, we have no question of homestead rights of *minor children.*

was her right of homestead, and Mr. Ingram recognized that fact when he returned with her. Immediately thereafter,[2] and under date of March 11, 1940, Mrs. Ingram executed to Mr. Ingram a Warranty Deed covering Lot 9, regular in every respect except that from the beginning of the deed through the consideration clause, the deed recited:

"KNOW ALL MEN BY THESE PRESENTS: That I, Paralee Seaman Ingram, wife to W. T. Ingram—husband, for and in consideration of the sum of One and no/100 Dollars, cash in hand paid by W. T. Ingram, and love and affection. Subject to dower rights of grantor; so *land* as *grantor* lives on property and pays taxes, upon death of *grantor,* title reverts to estate of *grantee,* do hereby grant, bargain, sell and convey unto the said W. T. Ingram, and unto his heirs and assigns forever, . . ." (Italics our own.)

It was shown that the aforementioned deed was prepared by a layman, now deceased, and it is apparent that he used the word "land" for "long", and probably interchanged "grantor" and "grantee"; but the point is that Mrs. Paralee Seaman Ingram was living on the Lot 9 as her homestead when she executed the deed to Mr. Ingram and that they continued to live on the property, even to the time of the trial of this cause. Therefore, there was no actual abandonment of the homestead in any way, nor any overt claim of adverse possession so as to make applicable such cases as *Graves* v. *Simms Oil Co.,* 189 Ark. 910, 75 S. W. 2d 809; *Barnett* v. *Meacham,* 62 Ark. 313, 35 S. W. 533; *Brinkley* v. *Taylor,* 111 Ark. 305, 163 S. W. 521; *Fletcher* v. *Josephs,* 105 Ark. 646, 152 S. W. 293; and *Griffin* v. *Dunn,* 79 Ark. 408, 96 S. W. 190.

---

[2] That the Ingrams had returned to the said Lot 9 when the deed was executed is shown by Mr. Ingram's testimony:

"Q. At any event, this deed she gave you was executed shortly after you and she moved back into this property?

"A. Shortly after we moved into this home there.

"Q. And it was shortly after that that you got the other deeds and paid the taxes?

"A. Yes, sir."

Furthermore, the testimony here clearly shows that no notice of disavowal of the homestead—so as to set in operation the Statute of Limitations — was ever brought home to the plaintiff, J. H. Seaman, or any of the other heirs of F. G. Seaman. See *Watson v. Hardin,* 97 Ark. 33, 132 S. W. 1002; and *Cullins v. Webb,* 207 Ark. 407, 180 S. W. 2d 835. We therefore hold that there was no abandonment of the homestead by Mrs. Paralee Seaman Ingram.

II. *Adverse Possession.* But Mr. Ingram claims that the deeds he received from the State and the Improvement Districts set in motion the Statute of Limitations against the remaindermen. A widow, having what is similar to a *life estate* in the homestead, has the duty to pay the taxes, and *she* cannot remain in possession and acquire a tax title adverse to the remaindermen. See *Inman v. Quirey,* 128 Ark. 605, 194 S. W. 858. Thus Mrs. Paralee Seaman Ingram could not have acquired a tax title adverse to the plaintiffs. We have also held that when the husband acquires a tax title from the State, it inures to the benefit of the wife. See *Smith v. Kappler,* 220 Ark. 10, 245 S. W. 2d 809. And for other cases looking in the same direction, see *Dedmon v. Hawkins,* 211 Ark. 840, 203 S. W. 2d 183; *Smith v. Davis,* 200 Ark. 547, 140 S. W. 2d 126; and *Smith v. Maberry,* 148 Ark. 216, 229 S. W. 718. In 41 C. J. S. 765 the rule is stated:

"The purchase by a husband of an adverse claim to his wife's land inures primarily to the benefit of her title, and to his benefit only so far as his marital interests are concerned. Thus a husband cannot acquire a tax title to his wife's lands, . . ."

In one place in Mr. Ingram's testimony, this question and answer occur:

"Q. Why did you pay these taxes and secure these deeds?

"A. At the old lady's request for me to redeem the place. She had lived there so many years, and she still thought she would be better satisfied there."

The reference to the "old lady" was an affectionate reference to his wife, Mrs. Paralee Seaman Ingram, and shows that Mr. Ingram redeemed the property for her. So we hold that while remaining in possession, Mrs. Paralee Seaman Ingram could not execute a deed to her husband, Mr. Ingram, and thereby empower him to acquire a title adverse to the remaindermen without any notice to them: whatever title Mr. Ingram acquired from the State and Improvement Districts was, in effect a redemption by his wife and was neither adverse to her as life tenant nor adverse to the Seaman heirs as remaindermen. Thus adverse possession has never commenced.

III. *Betterments.* Mr. Ingram claimed that he had spent several thousand dollars improving the house in which he and Mrs. Paralee Seaman Ingram lived on Lot 9, and also in building a rent house on the same lot; and because of such expenditures, Mr. Ingram claimed Betterments under either of our two Betterment Statutes—that is § 84-1121 Ark. Stats. and § 34-1423 Ark. Stats. The Trial Court held against Mr. Ingram on both statutes, and he has appealed.

Sec. 84-1121 Ark. Stats. relates to the improvements made by the *purchaser* of a tax title. We have held in Topic II, *supra,* that Mr. Ingram did not in fact purchase the tax title, but in effect redeemed for his wife. Therefore, it necessarily follows that Mr. Ingram has not brought himself within the purview of § 84-1121 Ark. Stats. See *Dedmon* v. *Hawkins,* 211 Ark. 840, 203 S. W. 2d 183, where we held that this Betterment Statute could not be claimed when the tax deed was in effect a redemption.

Sec. 34-1423 Ark. Stats. is the general Betterment Statute. Its language germane to this case reads:

"If any person, *believing himself to be the owner,* either in law or in equity, under color of title, has peaceably improved . . . any land . . ."
Under this Statute, Mr. Ingram is also met by the fact that one redeeming property from a tax sale is not in a position to claim that he *honestly believes* himself to be

the owner. All the deeds that Mr. Ingram acquired to the Lot 9—whether from the State or the Improvement Districts [3] — were, in effect, a redemption for the benefit of his wife, who was the life tenant. He was asked why he paid the taxes, and obtained the deeds, and he said it was his wife's request for him to *"redeem"* the place. Under our holding in *Graves* v. *Bean,* 200 Ark. 863, 141 S. W. 2d 50, the life tenant cannot recover for betterments where he has improved the property knowing that he had only a life estate, and that is the situation in the case at bar.

By building the rent house on the lot and dividing the main house into apartments, Mr. Ingram collected substantial rents, the exact amount of which he did not disclose. The Trial Court also found that Mr. Ingram's evidence of the amount of the improvements was too indefinite to entitle him to any relief; but we need not discuss that angle of the case, since Mr. Ingram was not entitled to relief under the Betterment Statutes. Furthermore, when Mr. Ingram's title fails to the fee, then necessarily the mortgages of Jiedel's, Inc. likewise fail to the fee.

The decree is affirmed.

---

[3] There is no need for us to discuss the relative rights of the State and the Improvement Districts as were involved in the case of *Terry* v. *Drainage Dist.,* 206 Ark. 940, 178 S. W. 2d 857, because we have held in Topic II, *supra,* that Ingram redeemed by these deeds, regardless of whether the State or the Improvement Districts had the superior title.