Pauline Ellis HENDERSON, Woodrow ELLIS, Mike ELLIS, Linda ELLIS, and the heirs of Forrest ELLIS, they being Lila JOHNS, Lewis ELLIS and Louise ELLIS *v.* Luther ELLIS

CA 83-83                                665 S.W.2d 289

Court of Appeals of Arkansas
Division II
Opinion delivered January 25, 1984
[Supplemental Opinion on Denial of Rehearing March 21, 1984.]

*Boeckmann & Humphrey,* by: *Joseph Boeckmann,* for appellants.

*Killough & Ford,* by: *John N. Killough,* for appellee.

JAMES R. COOPER, Judge. This is an appeal from a decree dismissing the appellants' petition to partition land willed to the appellee Luther Ellis by the mother of Luther Ellis, who was the grandmother of appellants Mike and Linda Ellis. Marion Edgar Ellis acquired two 80-acre tracts of land in Cross County in 1925. In 1917, his wife Dana Ellis died, leaving two children of their marriage, Forrest and Woodrow Ellis. Following the death of Dana Ellis, M. E. Ellis married Martha Ellis, by whom he fathered three children, Luther, Eugene and Pauline Ellis (Henderson). In 1931, M. E. Ellis died intestate and left surviving his widow, Martha Ellis, and the children referred to above.

The family continued to reside on the 160 acres and in 1931, one 80-acre tract forfeited to the state for nonpayment of taxes, followed by the other in 1932. In 1937, Jess Hunt acquired a deed to these lands at a tax sale and brought suit against Martha Ellis and the children of M. E. Ellis to expel them from the land and for a Writ of Possession. The Writ was granted on November 27, 1938, but the Ellis family never vacated the premises, though the Writ was to be effective December 27, 1938. Jess Hunt quitclaimed his interest in the lands to Mr. H. Steinberg on December 24, 1938, and on the same date Martha Ellis gave Mr. Steinberg a warranty deed to the 160 acres. Martha Ellis and her family remained in continuous possession of these lands and on November 25, 1942, Mr. Steinberg and his wife gave a quitclaim deed to Martha Ellis. Martha Ellis died in 1979

and left a will devising all of this land to her youngest son, Luther Ellis. Forrest Ellis is deceased, and survived by Lila Ellis Johns, Lewis (John) Ellis and Louise Ellis (Mitchell). Eugene Ellis is also deceased, and is survived by Mike Ellis and Linda Ellis.

The appellants herein brought this suit to partition these two 80-acre tracts, claiming to be co-tenants of the appellee. Their claim rests on the allegation that when M. E. Ellis died intestate in 1931, their mother Martha Ellis became a life tenant on these lands through her dower and homestead rights, and the children had a remainder interest in this land. They further allege that when Martha Ellis reacquired this land from H. Steinberg in 1942, this acted as an equitable redemption in favor of the children of Martha Ellis. The appellee contends that when Martha Ellis purchased her quitclaim deed from H. Steinberg, she purchased the fee simple title and that there was no equitable redemption. The chancellor found that there was no equitable redemption; that through her actions, Martha Ellis had acquired title to the land by adverse possession, and that the appellants were barred by laches from asserting their claim to these lands. For reversal, the appellants argue that the findings of the chancellor are not supported by substantial evidence. We will consider each point separately.

It is undisputed that in 1931, upon the death of her husband, M. E. Ellis, Martha Ellis had a life estate in these lands, and among her duties as the life tenant was the payment of the taxes on this land. If a life tenant allows the taxes on the land occupied to become delinquent and purchases the land at the tax sale, this acts as a mere redemption, as a life tenant in possession cannot acquire title thereto by permitting it to sell for the taxes and buying it at a tax sale. *Findley* v. *Tyler*, 227 Ark. 663, 300 S.W.2d 598 (1957). Likewise, a life tenant cannot allow the land to be forfeited for nonpayment of taxes and later purchase it from a third party who has purchased at a tax sale, thereby strengthening his title, as the law will not allow that to be done indirectly which may not be done directly. *Inman* v. *Quirey*, 128 Ark. 605, 194 S.W. 858 (1917). The appellant argues that these principles of equitable redemption are not relevant due to the fact that the purchaser at the tax sale, Jess

Hunt, instituted an action that ultimately resulted in a Writ of Possession being awarded to Hunt against Martha Ellis and her minor children. The appellee reasons that this action had the effect of adjudicating title to the lands in question and ultimately cut off any claim that Martha Ellis or her minor children may have had to the lands. However, an action in ejectment is a mere possessory action and does not serve to adjudicate title unless title was made an issue in the action. *Jimmerson* v. *Fordyce Lumber Co.,* 119 Ark. 413, 178 S.W. 381 (1915); 28 C.J.S. *Ejectment* § 119. From the record we cannot find where the action instituted by Jess Hunt did anything more than award possession to Jess Hunt upon the strength of his tax deed. Therefore, that action cannot be relied upon to cut off the rights of Martha Ellis or her children or the children of M. E. Ellis in the lands as the appellee would have us believe. Although Jess Hunt was awarded a Writ of Possession in these lands, it is clear from the record and testimony that he never took possession from Martha Ellis, and, in fact, had no interest in the land when the writ of possession became effective.

As has already been stated, Martha Ellis was under a duty to the remaindermen to pay the taxes on this land and a failure to do so is waste. *Magness* v. *Harris,* 80 Ark. 583, 98 S.W.362 (1906). The law is well settled "that a life tenant, whose duty it is to pay the taxes, cannot permit a sale of the land for taxes, and thus acquire the interest of the remainderman. Such purchases are regarded as mere redemptions." *Galloway, supra; Inman, supra.* Thus, the subsequent purchase of the lands herein by Martha Ellis from H. Steinberg was an equitable redemption in favor of the remaindermen children of M. E. Ellis and did not strengthen the interest of Martha Ellis in the land.

The chancellor below also found that Martha Ellis had acquired title to the subject lands by adverse possession. In order for a life tenant whose interest arises out of a homestead right to acquire title by adverse possession against her remaindermen, the life tenant must first abandon her homestead right and bring this fact home to the remaindermen in order to set the statute of limitations into action. *Ingram* v. *Seaman,* 223 Ark. 414, 267 S.W.2d 6 (1954). There is no evidence in the record that Martha Ellis ever

abandoned her homestead rights in this property or otherwise moved off this property until her death, thus there could be no adverse possession.

Finally, the court below found that the appellants were guilty of laches by not asserting their rights in the subject property sooner. It is clear that one in the position of a remainderman may not maintain any action for possession until the death of the life tenant. *Luster* v. *Arnold,* 249 Ark. Ark. 152, 458 S.W.2d 414 (1970). Since Martha Ellis, the life tenant did not die until 1979, there can be no laches on the part of the appellants.

Reversed and remanded for further proceedings consistent with this opinion.

CLONINGER and CORBIN, JJ., agree.

Supplemental Opinion on Denial of Rehearing
delivered March 21, 1984

JAMES R. COOPER, Judge. In our original opinion, we held that, since Martha Ellis was a life tenant in possession, she could not adversely possess the 160 acres without first abandoning her homestead rights. The appellee, Luther Ellis, has filed a petition for rehearing which alleges that, perhaps, not all of the 160 acres could be so claimed by her. Therefore, says the appellee, she could have adversely possessed a portion of the land, specifically, that portion which exceeds the limits contained in the Arkansas Constitution, Article 9, section 4. That section limits the homestead to 160 acres, or an amount of land valued at no more than $2,500.00, but not less than 80 acres.

The chancellor found that Martha Ellis adversely

possessed the entire tract, and did not decide this issue. It appears from the record that Martha Ellis could have adversely possessed a portion of the 160 acres, that being the lands in excess of that which she could have claimed by virtue of her homestead rights under Article 9, section 4 of our Constitution and her dower rights.

Accordingly, the appellee is correct in asserting that the case should be remanded for the chancellor to determine, in light of our original opinion, what lands were subject to adverse possession, if any. As to those lands, we hold that the chancellor's finding of acts sufficient to constitute adverse possession is neither clearly erroneous or against a preponderance of the evidence. Reversed and remanded for further proceeding.